UNITED STATES of America, Appellee,

v.

Rocco PAOLICELLI, Appellant.

No. 74–1229.

United States Court of Appeals, Fourth Circuit.

Argued July 24, 1974.

Decided Oct. 18, 1974.

Rehearing Denied Dec. 18, 1974.

**972**

Plato Cacheris, Alexandria, Va. (Hundley & Cacheris, Alexandria, Va., on brief), for appellant.

Thomas K. Moore, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

Waiving his right to a jury, Rocco Paolicelli was tried to the court and convicted of making a false declaration to a federal grand jury in violation of 18 U. S.C. § 1623.[1] Appealing his conviction, Paolicelli's assignments of error include (1) that his responses to questions before the grand jury were literally accurate and were not false as a matter of law and, (2) that the Government failed to establish that the declarations made by him were material to the grand jury's inquisition.

■ The charges against Paolicelli stemmed from his appearance before a grand jury which was investigating the activities of his employers, the Pomponio brothers, and particularly their alleged bribery of one Paul S. Fry to influence him relative to certain business transactions. One of the items was a Continental Mark III automobile allegedly given to Fry by the Pomponios in December of 1968. The record indicates that while the automobile was in fact purchased by the Pomponios, the purchase order and specifications were placed with the dealer by Paolicelli. Before the grand jury Paolicelli was asked whether he had purchased a vehicle from the dealer to which he responded in the negative. The record shows that his answers were something less than responsive and during the questioning counsel for the Government made it clear that in using the term "purchase" or "buying" he was attempting to elicit from Paolicelli whether he had placed an order or otherwise indicated to the dealer the specifications relative to the Continental Mark III. The examination closed with this exchange:

"Q. My question to you is: did you—and I'm not saying that you did and that I have any definite evidence that you did or didn't, I just want to get it fairly definite on the record

1. 18 U.S.C. § 1623 reads in pertinent part as follows:
"(a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

that you did not tell a Mr. Lyon at O'Brien and Rohall the specifications that you wanted with regard to a Continental Mark III.

A. No, sir, I don't remember.

Q. If you had, you would remember?

A. I'm pretty sure, if it comes to that type of car.

Q. Have you ever ordered a Continental Mark III in your life?

A. No, sir.

Q. Or got involved in the purchase of one in any way?

A. No, sir."

The foregoing questions and answers excerpted from Paolicelli's grand jury testimony were included in the indictment.[2]

■■■ Relying upon Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), Paolicelli takes the position that since the automobile was purchased by the Pomponios and not by him his answers were literally accurate and cannot support his conviction. We, of course, recognize the validity of the premise that if a party does not understand the question and gives a non-responsive answer, such an answer is not perjurious, nor can a charge of perjury "be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows." Fotie v. United States, 137 F.2d 831, 842 (8 Cir. 1943). However, we agree with the Government that the questions and answers in the present case, running from the general to the particular was precisely the kind of questioning which the Supreme Court indicated in *Bronston* would be sufficient to support a

charge of perjury. The answer to Paolicelli's additional contention that he was confused by the questioning is that the district judge as the finder of the facts resolved this issue against him and we accept that finding. The record demonstrates that the minds of the Government counsel and Paolicelli did, in fact, meet on the definition of the words being used in the interrogation, and in the context thereof Paolicelli's denial that he had ever been involved in any way in the purchase of the Continental Mark III was a false declaration knowingly made by him.

■■ ■■ The second issue raised on this appeal by Paolicelli with respect to the materiality of his statements is, of course, one of law, Brooks v. United States, 253 F.2d 362 (5 Cir. 1958), cert. denied, 357 U.S. 927, 78 S.Ct. 1374, 2 L.Ed.2d 1372; United States v. Alu, 246 F.2d 29 (2 Cir. 1957), and the record amply supports the conclusion of the district court. The latitude of materiality with respect to grand jury proceedings was stated in United States v. Stone, 429 F.2d 138, 140 (2 Cir. 1970).

"However, materiality of statements made in a grand jury investigation may more readily appear than that of similar evidence offered on an issue in civil or criminal litigation, since the purpose of the investigation is to get at facts which will enable the grand jury to determine whether formal charges should be made against someone rather than prove matters directly at issue. * * * Leads to further inquiry may be of material worth to an investigation. Thus the test of materiality is whether the false testimony has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation."

2. In his brief and oral argument counsel for the defendant attached considerable significance to a typographical omission in the first question quoted in the indictment. However, it is clear from the record that the defendant and his trial counsel relied upon the transcript of the grand jury testimony and were neither misled nor prejudiced by such omission. Additionally, the failure to raise this issue at or prior to trial in the district court constituted a waiver of this technical defect. *See* Pifer v. United States, 158 F.2d 867 (4 Cir. 1946); Rule 12(b)(2), Fed.R.Cr.P.

The relationship between the interrogation of Paolicelli and the grand jury's objective in investigating the possible bribery of Fry by the Pomponios is obvious and his false statements in respect thereto assuredly tended to impede the grand jury's investigation.

We have carefully considered the other assignments of error and find them to be without merit. Accordingly, the conviction is affirmed.

Affirmed.

CRAVEN, Circuit Judge (dissenting):

This perjury conviction rests on murky answers to imprecise questions about defendant's minor role in the purchase of a Lincoln Continental five years previously. Everyone agrees the defendant did not "buy" the car in any sense of the word. All that he did was initiate the purchase made by his bosses, transmit special equipment specifications and confirm the order by telephone. The final retail purchase order ran to Paul Fry. The car was titled in Fry's name, and one of the Pomponios, defendant's employers, paid by check delivered directly to the salesman. The subsequent delivery to Fry occurred without the defendant's participation. There is no evidence the defendant knew the purchase was to bribe Fry or that he even knew Fry was to receive the car. Yet the majority concludes that the prosecutor "made it clear that in using the term 'purchase' or 'buying' he was attempting to elicit from Paolicelli whether he had placed an order or otherwise indicated to the dealer the specifications relative to the Continental Mark III."

I think the record points strongly in the opposite direction.[1] In light of

---

1. The prosecutor asked the following series of questions of defendant before the grand jury:
   Q. Have you ever had occasion to purchase an automobile for the Pomponio group?
   A. No, sir, not that I know—I've dealt with a lot of the cars though.
   Q. What cars?
   A. When I say "dealt with them", took them to the garage or had them worked on or something like that and picked them up.
   Q. But you have never been down to order a car for them, have you?
   A. Not that I know of. I've ordered trucks.
   Q. Did you ever order a car for Mr. Lou Pomponio, Sr.?
   A. No, I don't remember it. I don't remember ordering the car, no. I remember ordering a car that I was using myself, yes, which was an LTD.
   Q. You ordered a car that you were using yourself?
   A. Yes, that's right, a company car.
   Q. Is it your testimony that you have never ordered a car for Mr. Louis Pomponio, Sr., or for any of the Pomponio corporations?
   A. Let's put it this way: they allow me to go ahead and buy a car and I buy it. If that's purchasing, yes, I have done it that way.
   Q. Who was the car for?
   A. For me. I used it on the job.
   Q. But you have never bought a car or ordered a car or had anything to do with the purchase of a car that was not for your use on the job?

   A. Not that I can remember, no. I don't remember doing anything like that. I remember going—when my brother-in-law, Mr. Pomponio, bought his car, I went with him—and this was quite a while ago we're talking about. I went to see the car, the color and—I brought him up there, he took a car back—I don't remember how the thing goes, but to actually buy the car, no, I don't remember.
   Q. When I say "buy", I don't mean pay for the car. I don't want to split hairs with you. What I'm talking about is the whole general circumstance of going in and talking to the salesman, telling the salesman what you want in the way of a car.
   A. Not that I know of, no.
   Q. You never purchased—are you familiar with O'Brien and Rohall?
   A. Yes, I bought a car there.
   Q. For yourself?
   A. I had service done there. I've done quite a bit of service there.
   Q. Did you buy a car there for Mr. Pomponio?
   A. No, sir, not that I know of.
   Q. Did you buy a car there for Mr. Paul Fry?
   A. No, sir.
   Q. You did not?
   A. No, sir, not that I know of.
   Q. Have you ever placed an order for an automobile at O'Brien and Rohall?
   A. I don't remember ever buying a car or purchasing.
   Q. How many cars have you purchased?

*Bronston's* observation that "[p]recise questioning is imperative as a predicate for the offense of perjury," 409 U.S. at 362, 93 S.Ct. at 602, I do not think a prosecutor can be excused from the repeated application of the words "buy" and "purchase," themselves words of art, to a set of facts that everyone agrees did not amount to buying or purchasing. He especially cannot be excused when, as here, the prosecutor himself had knowledge of the facts and the defendant was a bricklayer with a grade-school education,[2] who had, as a matter of fact, actually bought a car for himself from the same dealer.

The defendant expressed his obvious confusion with the questioner's attempts to pinpoint a transaction involving a Continental Mark III in which the defendant was neither the purchaser nor the ultimate recipient:

> Q. [Y]ou did not *purchase* an automobile at O'Brien and Rohall?
>
> A. . . . You're confusing me now.
>
> . . . . . .
>
> A. . . . I don't remember buying it.

> A. I bought two cars.
> Q. Did you purchase either one of those at O'Brien and Rohall?
> A. No, sir.
> Q. If you had purchased a car at O'Brien and Rohall, you would have remembered, would you not?
> A. I would, yes.
> Q. But your testimony is that you did not purchase an automobile at O'Brien and Rohall?
> A. You're putting something to me like I'm positive that I did and you have got me thinking whether I did or did not. You're confusing me now.
> Q. No, I just want to get your testimony.
> A. I don't remember. I don't remember buying it.
> Q. You don't remember buying one there?
> A. I bought a Cougar, I think, but that's way back.
> Q. At O'Brien and Rohall?
> A. I think so, I don't remember. I had a Cougar—
> Q. I'm talking about a Continental Mark III.
> A. No, sir, not that I recall.
> Q. You didn't buy a Continental Mark III, or place the order or have anything to do with the purchase of a Continental Mark III at O'Brien and Rohall?
> A. No, sir, I don't remember buying the car.
> Q. When I say "buying", I'm talking about place the order and nothing else.
> A. That I, myself, went and placed an order that says I want a certain car?
> Q. Right.
> A. No, sir, I—Iwas just going to tell you something else, but no.
> Q. If you had, you would have remembered buying a Continental Mark III?
> A. I'm pretty sure, that's an expensive car. If I had laid out any money for a car like that, I think—I bought a Cougar from them, that's what I bought.

> Q. You bought a Cougar from them?
> A. That's right.
> Q. My question to you is: did you—and I'm not saying that you did and that I have any definite evidence that you did or didn't, I just want to get it fairly definite on the record that you did not tell a Mr. Lyon at O'Brien and Rohall the specifications that you wanted with regard to a Continental Mark III.
> A. No, sir, I don't remember.
> Q. If you had, you would remember?
> A. I'm pretty sure, if it comes to that type of a car.
> Q. Have you ever ordered a Continental Mark III in your life?
> A. No, sir.
> Q. Or got involved in the purchase of one in any way?
> A. No, sir.

The indictment was based upon the answers to the last four questions:

> Q. My question to you is: did you tell a Mr. Lyon at O'Brien and Rohall the specifications that you wanted with regard to a Continental Mark III?
> A. No, sir, I don't remember.
> Q. If you had, you would remember?
> A. I'm pretty sure, if it comes to that type of a car.
> Q. Have you ever ordered a Continental Mark III in your life?
> A. No, sir.
> Q. Or got involved in the purchase of one in any way?
> A. No, sir.

2. When a perjury conviction turns on the particular language involved, the defendant's intellectual, educational, and environmental background must be considered. United States v. Rose, 215 F.2d 617 (3d Cir. 1954). The irony here is that it was the prosecutor, not the defendant, that had so much difficulty with the language.

. . . . . .

Q. I'm talking about a Continental Mark III.

A. No, sir, not that I recall.

Q. *You* didn't buy a Continental Mark III, or place the order or have anything to do with the purchase of a Continental Mark III at O'Brien and Rohall?

A. No, sir, I don't remember *buying* the car.

Q. When I say "buying", I'm talking about place the order and nothing else.

A. That *I, myself,* went and placed an order that says *I want a certain car*?

Q. *Right.*

(Emphasis added.) To the defendant's last answer above, which showed him still responding in the context of a car for himself, the prosecutor responded with a confirmatory "Right," followed immediately by:

Q. If *you* had, *you* would have remembered *buying* a Continental Mark III?

A. [Yes, if] *I had laid out any money* for a car like that, I think— I *bought* a Cougar from them, that's what I *bought*.

Q. You *bought* a Cougar from them?

A. That's right.

(Emphasis added.)

Finally, the prosecutor got somewhat on target and began to ask questions that related to defendant's limited participation in the transaction. It is defendant's answers to these questions that are held false. Where the majority errs, I respectfully suggest, is in failing to read the answers in the context of the preceding questions:

Q. My question to you is: did you . . . tell a Mr. Lyon at O'Brien and Rohall the specifications that you wanted with regard to a Continental Mark III?

A. No, sir, I don't remember.

Q. If you had, you would remember?

A. I'm pretty sure, if it comes to that type of car.

Q. Have you ever ordered a Continental Mark III in your life?

A. No, sir.

Q. Or got involved in the purchase of one in any way?

A. No, Sir.

The first three questions, though perhaps merely ambiguous seen alone, were consistent with the preceding questions relating to the purchase of another car by the defendant—one for his own use. The answers were contextually truthful, and the majority does not indicate otherwise. The perjury conviction must therefore rest on the premise that the last question brought about the necessary meeting of the minds: that it clearly signaled to the defendant that the direction of the previous dozen questions was being reversed; that the defendant now suddenly understood that "purchase" didn't mean purchase but meant telephoning an order in for his boss; and that with instant insight the defendant then knew the inquiry was whether he placed an order for his employers for a Continental Mark III to be purchased and delivered later by them to an unknown third party. Maybe so, but I respectfully suggest that one last question in a long series isn't enough for clarity, and that the prosecutor failed to carry his burden of pinning "the witness down to the specific object of the questioner's inquiry." Bronston v. United States, 409 U.S. at 360, 93 S.Ct. at 601.

I would reverse.

## ORDER DENYING REHEARING

FIELD, Circuit Judge.

Upon consideration of the appellant's petition for rehearing and suggestion for rehearing *in banc*, the appellee's response in opposition thereto, and the appellant's supplemental argument;

Now, therefore, with the concurrence and approval of Circuit Judge BUTZ-

NER and in the absence of a request for a poll of the entire court as provided by Appellate Rule 35(b), it is adjudged and ordered that the petition for rehearing is denied.

Circuit Judge CRAVEN would grant the petition to rehear and adheres to his dissent.

CRAVEN, Circuit Judge, dissenting from the denial of the petition to rehear:

I would grant the petition and reverse the conviction on the authority of United States v. Wall, 371 F.2d 398 (6th Cir. 1967).