UNITED STATES of America, Appellee,

v.

James K. FARNHAM, Appellant.

No. 85–5209.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1986.

Decided May 27, 1986.

---

Davison Douglas (Norman B. Smith, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., on brief), for appellant.

Wanda A. DeWease, Student Counsel (John P. Alderman, U.S. Atty., Thomas R. King, Jr., Asst. U.S. Atty., Jean B. Weld, Asst. U.S. Atty., Roanoke, Va., on brief), for appellee.

Before WINTER, Chief Judge, and MURNAGHAN and ERVIN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Defendant James K. Farnham was called before a grand jury apparently investigating possible tax violations by his employer, Joseph Griggs Associates, an architectural and engineering firm, together with several other businesses. The investigating case agents interviewed Farnham prior to his testimony, and the grand jury questioned Farnham about his involvement in the preparation and submission to the Department of Housing and Urban Development (HUD) of plans for an apartment project, which were allegedly falsified in order to secure HUD's approval. Farnham admitted to having prepared two sets of plans but denied that either was false.

Subsequently, Farnham was indicted for making false declarations to a grand jury

in violation of 18 U.S.C. § 1623.[1] At trial, the government introduced Farnham's grand jury testimony, together with the trial testimony of others, including the two case agents, tending to show that Farnham lied to the grand jury. Farnham was convicted of three counts of violating 18 U.S.C. § 1623 and received a consolidated sentence of three years, the service of all but six months of which was suspended.

Farnham's appeal rests on two grounds. First, he contends that the government failed to establish the materiality of any false statements because it failed to prove the scope of the grand jury investigation. Second, he asserts that the district court's refusal to sequester the second case agent during the testimony of the first case agent denied him a fair trial.

### I.

In order to convict an accused under 18 U.S.C. § 1623 for perjury before a grand jury, the government must show that the false declarations supporting the perjury prosecution were material to the grand jury's investigation. 18 U.S.C. § 1623. A statement is material for purposes of § 1623 if it has "the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." *United States v. Paolicelli*, 505 F.2d 971, 973 (4 Cir.1974), *quoting United States v. Stone*, 429 F.2d 138, 140 (2 Cir.1970); *see also United States v. McComb*, 744 F.2d 555, 563 (7 Cir.1984) (citing cases); *accord, United States v. Bailey*, 769 F.2d 203, 204 (4 Cir.1985). Materiality is a question of law reserved for the court. *Paolicelli*, 505 F.2d at 953.

Here, the government sought to establish the scope of the grand jury's investigation by introducing 37 of the 43 pages of Farnham's testimony before the grand jury and by the testimony of the two case

agents assisting the grand jury investigation. Although this may not have been the most reliable method of establishing the nature of the investigation, we conclude that it was sufficient to permit the district court to determine whether the false statements were material.

The government bears the burden of establishing materiality by showing a nexus between the false statements and the scope of the grand jury's investigation. *See, e.g., McComb*, 744 F.2d at 564. Traditionally, the government can establish the scope of the grand jury investigation by one of three methods: obtaining the testimony of a grand juror as to the nature of the investigation, *United States v. Byrnes*, 644 F.2d 107 (2 Cir.1981); introducing a full transcript of the grand jury proceedings, *United States v. Cosby*, 601 F.2d 754 (5 Cir. 1979); or having the attorney who presented the case to the grand jury testify. *United States v. Berardi*, 629 F.2d 723 (2 Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). Concededly, the government used none of these means. However, as the Fifth Circuit has explicitly held, the traditional methods are not the only means of establishing the scope of the grand jury's investigation. *United States v. Thompson*, 637 F.2d 267, 269 (5 Cir. 1981). In *United States v. Bailey*, 769 F.2d 203, 204 (4 Cir.1985), we implicitly subscribed to the view that any evidence tending to show the scope of the investigation is competent to establish materiality. In that case, we held that the introduction of the defendant's grand jury testimony, coupled with the testimony of another grand jury witness as to the nature of the questions asked of her, sufficed to establish the scope of the grand jury's investigation. *Id.*

---

1. 18 U.S.C. § 1623 provides in relevant part:
   (a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States know-

ingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

While the government must establish a nexus between the investigation and the false declaration, it need not prove the connection beyond a reasonable doubt. *See, e.g., Berardi,* 629 F.2d at 727. Given the wide-ranging investigative function of the grand jury, *United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974), the materiality of any line of inquiry pursued by a grand jury must be broadly construed. *Berardi,* 629 F.2d at 728; *Paolicelli,* 505 F.2d at 974. In the instant case, the district court had before it testimonial evidence that the grand jury was inquiring into tax matters involving Joseph Griggs Associates.[2] Farnham's grand jury testimony shows that the grand jury in fact exercised its broad investigatory powers to inquire into collateral wrongdoing in the form of false statements to HUD. Although disfavoring the use of only a partial transcript of grand jury proceedings, the Seventh Circuit has upheld the use of a partial transcript including only the defendant's grand jury testimony where the court could determine from the transcript the subject of the grand jury investigation. *McComb,* 744 F.2d at 564. Guided by our decision in *Bailey*[3] that a transcript of defendant's grand jury testimony, coupled with the corroboration of another witness, can establish sufficient nexus with the grand jury inquiry to support a prosecution under 18 U.S.C. § 1623, we find the proffered evidence in this case minimally adequate, although we encourage the government to avoid this issue in future cases by employing one of the relatively simple traditional methods of proof.

## II.

Federal Rule of Evidence 615 requires the trial court, at the request of a party, to sequester a witness, expressly providing an exception for "an officer or employee of a party which is not a natural person designated as its representative by its attorney."[4] Under this exception, the district court may allow the government's chief investigating agent to remain in the courtroom throughout the proceedings, even if he is expected to testify. *United States v. Parodi,* 703 F.2d 768, 773 (4 Cir.1983) (collecting cases). Here, the district judge refused Farnham's timely request to permit only one of the two case agents to remain in the courtroom, thus allowing the second agent to hear the testimony of the first agent. The presence of Agent Martin during the testimony and cross-examination of Agent Phillips assumes particular relevance in light of the fact that the allegedly false declaration charged in Count Three of the indictment concerned Farnham's denial before the grand jury that he had made certain statements to the agents. Thus, Farnham's conviction on Count Three turned exclusively on the relative credibility of the defendant on the one hand and Agents Phillips and Martin on the other. Sequestration of Martin during Phillips' examination would have minimized the opportunity for collusion or tailoring of testimony, permitting Farnham to test each

---

**2.** As defendant points out, the Fifth Circuit has held that the testimony of a case agent as to his own work in aid of a grand jury investigation cannot alone establish the scope of that investigation. *United States v. Cosby,* 601 F.2d 754, 757–59 (5 Cir.1979). Nevertheless, the efforts of one aiding an investigation certainly have some probative value in assessing the scope of that investigation. In the instant case, however, we have not only the testimony of the two case agents, but also the transcript of Farnham's testimony, which indicates that the grand jury extended its inquiry into other instances of wrongdoing by Joseph Griggs Associates, including the false statements to HUD.

**3.** In *Bailey,* we cited with approval *United States v. Ostertag,* 671 F.2d 262, 265 (8 Cir.1982), in which the Eighth Circuit held that the requisite nexus could be established on the basis of defendant's grand jury testimony alone.

**4.** Rule 615 of the Federal Rules of Evidence provides:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

agent's credibility, independent of the other's testimony.

We begin our consideration of this problem by noting that the application of Rule 615(2) under these circumstances presents us with an issue of first impression and that we proceed largely without the guidance of other federal courts. The little authority that exists is unclear, conclusory and conflicting.

Ignoring the mandatory ("shall") language of the rule, the Fifth Circuit invoked an abuse of discretion standard to uphold a trial court's refusal to exclude one of two Drug Enforcement Administration case agents from the proceedings, even though the agent in question did not testify until the end of the trial. *United States v. Alvarado*, 647 F.2d 537, 540 (5 Cir.1981). We believe this decision inapposite since the court apparently felt that one agent qualified as a representative of a party not a natural person under 615(2) while the other was a person whose presence was shown to be essential to the presentation of the evidence under 615(3).[5] One year earlier, the Fifth Circuit held that failure to exclude, upon timely request, one of two agents from the Bureau of Alcohol, Tobacco and Firearms under 615(2) did not constitute reversible error because no prejudice could be shown where the only agent to testify was the second witness and his testimony followed routine testimony of another witness merely identifying tape recordings. *United States v. Causey*, 609 F.2d 777, 777 (5 Cir.1980).

On the other hand, both the Fifth Circuit and the United States District Court for the District of Delaware have suggested in dicta that 615(2) clearly contemplates exempting only a single representative from a sequestration request. *Causey*, 609 F.2d 778; *Oliver B. Cannon and Son v. Fidelity and Casualty Co.*, 519 F.Supp. 668, 679 (D.Del.1981).

Relying on the mandatory language of Rule 615 and the singular phrasing of the exception embodied in 615(2), we hold that the district court erred in refusing to sequester Agent Martin, if not during the entire trial, at least during the testimony of his colleague. As the Advisory Committee noted, the sequestration of witnesses effectively discourages and exposes fabrication, inaccuracy, and collusion. Notes of Advisory Committee on Proposed Rules. Scrupulous adherence to this rule is particularly necessary in those cases in which the outcome depends on the relative credibility of the parties' witnesses.

We reject the government's suggestion that the technical violation of Rule 615 lacks consequence because the defendant cannot prove prejudice. Instead, we understand the mandatory, unambiguous language of the rule to reflect the drafters' recognition that any defendant in Farnham's position would find it almost impossible to sustain the burden of proving the negative inference that the second agent's testimony would have been different had he been sequestered. A strict prejudice requirement of this sort would be not only unduly harsh but also self-defeating, in that it would swallow a rule carefully designed to aid the truth-seeking process and preserve the durability and acceptability of verdicts. Rule 615 thus reflects an *a priori* judgment in favor of sequestration, and the exceptions should be construed narrowly in favor of the party requesting sequestration.

Believing that Rule 615 should be applied strictly, we reverse the conviction as to Count Three and remand for resentencing as to Counts One and Two. Although Rule 615 does not require that Farnham show prejudice, we remain bound by the harmless error rule. The agents' testimony related only to Count Three, and any possible collusion or tailoring, however egregious, could not have affected the out-

---

**5.** The government has not urged, nor do we suggest, that the second agent might have qualified under Rule 615(3). In fact, this perjury prosecution was disposed of in a relatively simple, two-day trial, and the constant attendance of two government agents who were present to testify to the same conversation cannot be deemed essential.

come as to the other two counts. This is the exceptional case because the facts are such that any presumption of prejudice is rebutted. Because Farnham received a consolidated sentence, we are, however, unable to determine what effect, if any, his conviction under Count Three had on the sentence imposed on him and thus to allocate his punishment. We therefore return the case to the district court for resentencing on Counts One and Two, and if the government be so advised, Farnham may be retried on Count Three.

REVERSED AND REMANDED.