859 F.2d 151
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sam DeBoard, Defendant-Appellant.
 No. 87-5666.
 United States Court of Appeals, Fourth Circuit.
 Argued June 24, 1988.
Decided Sept. 13, 1988.
 
 Marjorie Dean Martorella (Joseph G. Martorella, Martorella & Martorella on brief) for appellant.
 Joseph Francis Savage, Jr., Assistant United States Attorney (Michael W. Carey, United States Attorney on brief) for appellee.
 Before DONALD PHILLIPS and ERVIN, District Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Sam DeBoard was convicted on one count of wire fraud in violation of 18 U.S.C. Sec. 1343, two counts of tax evasion violating 26 U.S.C. Sec. 7201, and two counts of perjury proscribed by 18 U.S.C. Sec. 1623(a) and (c). On appeal, he asserts numerous errors. We affirm.
 
 I.
 
 2
 Sam DeBoard filed no tax returns and paid no federal income taxes from 1981 through 1986. On two occasions, December 5, 1985, and February 24, 1987, he testified before a grand jury regarding his financial transactions. The grand jury determined that there was probable cause to believe that DeBoard acquired substantial income from various schemes perpetrated upon and in conjunction with Wayne T. Luff, a real estate attorney in Huntington, West Virginia. Pursuant to an agreement with the government, Luff pled guilty to fraud and tax evasion for his role in embezzling clients' funds. At DeBoard's trial, Luff testified as a principal witness.
 
 
 3
 Luff met DeBoard in 1980, and in 1981 he began giving DeBoard large amounts of money for various ventures, including acquisitions of a coal mine, a satellite dish business, and stone quarry. Luff testified that DeBoard knew that most of the money was taken from trust accounts of Luff's clients.
 
 
 4
 Luff also testified that DeBoard convinced him to wire transfer $46,000 from a Huntington bank to a Miami, Florida bank on October 24, 1984. DeBoard represented to Luff that he would use these funds to prepay points on a loan to finance the quarry purchase. Instead, evidence showed that DeBoard purchased an antique car. For the misappropriation, the jury convicted DeBoard of wire fraud.
 
 
 5
 Luff also explained that DeBoard had instructed him to travel to California and arrange a check-kiting scheme. The scam was to obtain a deposit of $15,000 in a California bank in order to get a loan guarantee of $550,000 to cover their losses. When the grand jury investigated this allegation, DeBoard testified that Robert Beamer, the president of Security Bank, Huntington, West Virginia, agreed to loan Luff and DeBoard the $550,000 if their guarantee came through. At trial, Beamer, Luff and vice president Brian Shepard all denied that any meeting occurred. DeBoard was convicted of perjury for the grand jury testimony regarding the alleged bank meeting.
 
 II.
 
 6
 On appeal, DeBoard first argues that there was insufficient evidence to support his conviction for wire fraud for the transfer of funds from the West Virginia bank to a bank in Miami.[1]
 
 
 7
 The standard of review for sufficiency of the evidence is well established. Viewing the evidence in the light most favorable to the government, an appellate court must determine if any rational trier of facts could have found the defendant guilty beyond a reasonable doubt. E.g., U.S. v. MacDougall, 790 F.2d 1135 (4th Cir.1986).
 
 
 8
 Under this standard, the testimony of Luff and corroborating witnesses clearly provided sufficient evidence for the wire fraud conviction. Luff testified that he provided $46,000 by wire transfer for use by DeBoard in the rock and stone quarry purchase. App. 204. Luff accused DeBoard of knowing that this money was from clients' trust accounts. DeBoard told Luff the money would be applied to pre-paying the points on a loan financing the quarry deal. Instead he used it to buy an antique car from Classic Motor Carriage. App. 173.
 
 
 9
 On appeal, DeBoard attempts to discredit Luff's testimony and argues that without Luff's incredible testimony, there is insufficient evidence of wire fraud. However, Luff's credibility is a question already answered by the jury. As the trier of facts, it believed Luff's testimony regarding DeBoard's misappropriation of the funds from the Miami wire transfer. Luff's statements and corroborating testimony by government investigators provided sufficient evidence with which to convict DeBoard of wire fraud.
 
 III.
 
 10
 DeBoard challenges one of his two perjury convictions on the basis that the testimony in question was not material to the grand jury investigation, as required under Sec. 1623.[2] We disagree.
 
 
 11
 In U.S. v. Farnham, 791 F.2d 331 (4th Cir.1986), this court declared that a statement is material if it has "a natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." Id. at 333. DeBoard argues that his testimony before the grand jury regarding the alleged bank meeting was irrelevant to its investigation of his tax evasion schemes and thus did not impede the grand jury's progress.
 
 
 12
 However, tax evasion was not the only crime under investigation. During an in camera hearing, Martha Bentley, a grand juror, testified that the grand jury was investigating fraud, drugs and income tax evasion. Specifically, the grand jury looked into a wire fraud scheme involving a California loan guarantee. DeBoard perjured himself when he testified abut this guarantee. He told the grand jury that at a meeting at Security Bank, the bank president promised to loan him funds to cover the overdrafts if the California loan guarantee was made. Thus, DeBoard's false testimony was material to the grand jury's investigation although he was not convicted of this particular wire fraud. His perjury conviction is upheld.
 
 IV.
 
 13
 DeBoard raises numerous other challenges to the validity of his convictions. Our review of the record discloses no merit in these contentions. Finding no error below we affirm.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 18 U.S.C. Sec. 1343 provides:
 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.
 
 
 [2]
 18 U.S.C. Sec. 1623 provides in part:
 (a) Whoever under oath (or in any declaration, certificate, verification or statement under penalty of perjury as permitted under section 1746 of Title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.