61 F.3d 901
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Oscar ROYSTER, a/k/a W. O., Defendant-Appellant.
 No. 94-5625.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 4, 1995.
Decided July 31, 1995.
 
 ARGUED: William H. Murphy, Jr., Baltimore, MD, for appellant. John Eric Evenson, II, Asst. U.S. Atty., Raleigh, NC, for appellee. ON BRIEF: Janice McKenzie Cole, U.S. Atty., Raleigh, NC, for appellee.
 Before RUSSELL, HAMILTON, and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Defendant-Appellant William O. Royster appeals his convictions for drug related offenses. Royster argues that his convictions should be reversed because the district court committed reversible error in admitting certain evidence at trial and in permitting more than one government agent to remain in the courtroom during trial. Finding no reversible error, we affirm.
 
 I.
 
 2
 On February 17, 1994, a grand jury in the Eastern District of North Carolina issued a six-count indictment against Royster, the Chief of Detectives of the Oxford Police Department in Oxford, North Carolina. The indictment charged Royster with: (1) conspiracy to possess with intent to distribute and distribution of cocaine in violation of 21 U.S.C. Sec. 846 (Count 1); (2) extortion in violation of 18 U.S.C. Sec. 1951 (Count 2); (3) tampering with a witness in violation of 18 U.S.C. Sec. 1512(b)(3) (Count 3); (4) two counts of making a false declaration to a grand jury in violation of 18 U.S.C. Sec. 1623 (Counts 4 and 5); and (5) forfeiture of money and property obtained from the felonious activities pursuant to 21 U.S.C. Sec. 853 (Count 6).
 
 
 3
 At Royster's 11-day jury trial beginning on April 25, 1994, the government presented evidence that Royster had accepted payoffs from Patrick Sidney, the leader of a cocaine distribution organization in Oxford, in order to provide the organization with local police protection and information. Sidney testified at trial that, between March or April of 1987 and continuing through 1990, he paid Royster approximately $100,000 to $125,000 in exchange for the protection and information.
 
 
 4
 On May 9, 1994, the jury convicted Royster on all counts, including a separate verdict ordering forfeiture of $55,000 in drug proceeds.
 
 
 5
 On August 8, 1994, the district court sentenced Royster to 293 months on Count 1, 240 months on Count 2, 120 months on Count 3, and 60 months each on Counts 4 and 5, with the sentences on Counts 2 through 5 to run concurrently with the sentence on Count 1. The court also fined Royster $19,000.
 
 II.
 
 6
 Royster first contends that the district court committed reversible error by permitting Agent Steele Myers of the North Carolina State Bureau of Investigation to testify on redirect examination about the entire contents of his written report of an interview with coconspirator Jimmy Chavis. Defense counsel objected to the admission of the testimony, and the court overruled the objection, reasoning that defense counsel had opened the door to introduction of the content of the report during his cross-examination of Myers. We review for abuse of discretion the district court's evidentiary decision to admit evidence. United States v. Lewis, 10 F.3d 1086, 1088 (4th Cir.1993).
 
 
 7
 Royster complains that the admission of the report was "devastating" because it detailed Royster's payoff arrangement and erroneously permitted the government to bolster Chavis' credibility by showing that his statement to Agent Myers was consistent with his testimony at trial. He argues that he did not open the door to the entire interview but limited his questioning to the portion of the conversation between Myers and Chavis that was not contained in the interview report. The government responds that, by implying that Sidney and another coconspirator had improperly influenced Chavis to fabricate a statement against Royster, and by eliciting and offering hearsay and double hearsay information from Myers' interview report on cross-examination, Royster opened the door to allow the government to introduce Myers' entire report to bolster Chavis's credibility under Fed.R.Evid. 806.[1] The government further contends that admission of the report was justified because Royster raised the issue of the substance and accuracy of the interview report by expressly referring to the report in his cross-examination of Myers.
 
 
 8
 We need not decide whether the district court abused its discretion in allowing Myers to testify about the entire interview report because we hold that any purported error was harmless. "[I]n the realm of nonconstitutional error, the appropriate test of harmlessness ... is whether we can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error."[2] United States v. Williams, 41 F.3d 192, 199-200 (4th Cir.1994) (quoting United States v. Sanders, 964 F.2d 295, 299 (4th Cir.1992)), cert. denied, 115 S.Ct. 1442 (1995); see 28 U.S.C. Sec. 2111 (judgments are not to be set aside on appeal based on "errors or defects which do not affect the substantial right of the parties"); Fed.R.Crim.P. 52(a) (same). The outcome of this harmless error analysis depends on the particular facts of the case. United States v. Grooms, 2 F.3d 85, 89 (4th Cir.1993), cert. denied, 114 S.Ct. 1550 (1994).
 
 
 9
 In determining that any error was harmless, we first recognize that Chavis testified at trial and that Royster's opportunity to cross-examine Chavis about his statement to Myers effectively cured any harm or prejudice that may have resulted from admitting the report. Cf. Idaho v. Wright, 497 U.S. 805, 823 (1990) (although corroborating evidence does not determine that a hearsay statement is reliable, "the presence of corroborating evidence ... indicates that any error in admitting the statement might be harmless"). In the face of this scant evidence of harm, the evidence at trial overwhelmingly demonstrated Royster's guilt. Cf. Williams, 41 F.3d at 200 (holding that error in the admission of hearsay statement was harmless in part due to "the overwhelming evidence of guilt"); United States v. Velazquez, 847 F.2d 140, 143 (4th Cir.1988) (holding that any error in admitting evidence was harmless "in view of other overwhelming evidence of guilt"). The government's case consisted of 39 witnesses and approximately 300 exhibits. Several coconspirators, including Sidney himself, as well as law enforcement agents and civilian witnesses, offered testimonial evidence linking Royster to the Sidney drug conspiracy. In addition, the government introduced a damaging audiotape of a conversation between Royster and Chavis, in which Royster told Chavis that Chavis should lie to the grand jury about the Sidney organization. The government also presented at trial the transcript of Royster's testimony before the grand jury, in which Royster made false statements regarding his contact with Chavis and members of the Sidney organization. In contrast to the government's evidence, Royster's case consisted of his own testimony, in which he denied the allegations, and the testimony of four law enforcement agents and one other government official, all of whom commended Royster's antidrug police work in Oxford.
 
 
 10
 Considering the opportunity to cross-examine Chavis and the sum of evidence at trial, we conclude that the jury's verdict was not swayed by the admission of Myers' testimony on the full content of the interview report and that any error in admitting the testimony was therefore harmless.
 
 III.
 
 11
 Royster next contends that the district court committed reversible error by allowing, over his objection, more than one government agent to remain in the courtroom during trial. Specifically, he argues that the court's allowing three agents to remain in the courtroom violated Fed.R.Evid. 615. Rule 615 provides:
 
 Exclusion of Witnesses
 
 12
 At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.
 
 
 13
 Fed.R.Evid. 615. Due to the mandatory language of Rule 615, we review de novo the district court's decision not to sequester a witness at the request of a party. See United States v. Farnham, 791 F.2d 331, 334-35 (4th Cir.1986).
 
 
 14
 Royster's argument clearly lacks merit because only one of the three government agents, Agent Myers, testified at trial. In Farnham, this Court recognized that under Rule 615(2) a district court may allow the government's chief investigating agent to remain in the courtroom throughout the proceedings, even if he is expected to testify. Id. at 334. In this case, Agent Myers clearly comes within Rule 615(2), and Royster conceded as much at oral argument. Regarding the presence of the two other agents in the courtroom, Royster cannot object to their presence under Rule 615. The Rule only applies to "witnesses" and these agents were not witnesses at trial.[3]
 
 IV.
 
 15
 For the foregoing reasons, we affirm Royster's convictions.
 
 AFFIRMED
 
 
 [1]
 Fed.R.Evid. 806 states in pertinent part:
 When a hearsay statement ... has been admitted into evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.
 
 
 [2]
 Although Royster offers no legal basis to support his argument that the admission of the report violated his Fifth Amendment right to due process, we hold that, even if any error were of constitutional significance, Royster would not be entitled to have his convictions reversed because any error was harmless beyond a reasonable doubt in light of the overwhelming evidence of guilt. See Arizona v. Fulminante, 499 U.S. 279, 306-08 (1991) (compiling cases holding that trial errors of constitutional significance do not require reversal if they are harmless beyond a reasonable doubt). We add that the admission of the report clearly did not violate the Confrontation Clause of the Sixth Amendment because the hearsay declarant, here Chavis, was subjected to cross-examination at trial. See California v. Green, 399 U.S. 149, 164 (1969) (holding that the admission of hearsay testimony does not violate the Confrontation Clause when declarant is testifying as a witness and subject to cross-examination at trial)
 
 
 [3]
 Royster asserted at oral argument that, even though the other agents were not witnesses, allowing them to remain in the courtroom infringed his right to call the agents as witnesses at trial. Royster, however, could have protected this right simply by placing these agents on his witness list, something he did not do