**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                      No. 98-4156

TERRY CHARLES JENKINS,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
C. Weston Houck, Chief District Judge.
(CR-96-358-3)

Argued: January 28, 1999

Decided: May 7, 1999

Before WILKINS, MOTZ, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Isaac Bruck, Columbia, South Carolina, for Appellant. Scarlett Anne Wilson, Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Scott Schools, Assistant United States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Terry Charles Jenkins was convicted of conspiracy to distribute
marijuana, possession of marijuana, possession of a firearm and
ammunition by a convicted felon, and murder in furtherance of a drug
trafficking crime. He now challenges his murder conviction on sev-
eral grounds. Finding no error below, we affirm.

I.

On October 31, 1995, Andre Weston was shot and killed outside
Columbia, South Carolina, apparently in connection with a drug sale.
In April 1997, Terry Charles Jenkins was indicted for Weston's mur-
der, at which time Jenkins was already under indictment for various
drug- and weapon-related offenses. At trial in district court in the Dis-
trict of South Carolina, Jenkins conceded guilt on all drug and weap-
ons charges, but denied having murdered Weston.

Shortly before trial, the Government notified Jenkins's counsel that
it had obtained a videotape that had been recorded in the interview
room of the Lexington County, South Carolina, sheriff's office. The
tape showed a lengthy interview between Jenkins; his attorney, Theo
Williams; and officers of the Lexington County Sheriff's Department,
Scottie Frier and Carlisle McNair. In addition to this interview, the
beginning of the tape contained a twenty-second recording of Jen-
kins's private, pre-interview conference with his attorney, Mr.
Williams.[1] Although the Government represented that it had learned

_____

[1] During the recorded attorney-client conference, Jenkins and Mr. Wil-
liams discussed why Jenkins had been calling Weston's beeper number
on the night of the murder. Jenkins admitted contacting Weston "to get
the drugs." In the ensuing interview, Jenkins acknowledged involvement
in the drug trade and to having planned to meet Weston for a drug sale
on the night of the murder.

of the videotape only shortly before trial and that none of its trial evidence against Jenkins had been derived from the private attorney-client conference, Jenkins moved to suppress the contents of the videotape and to dismiss the murder charges, arguing that improper taping of the attorney-client conference violated his Sixth Amendment right to counsel.

In preparation for the pre-trial suppression hearing, Jenkins sought to depose officers McNair and Frier. However, each officer invoked his Fifth Amendment right not to testify. At the suppression hearing, Jenkins conceded that he could not demonstrate that he had been prejudiced by the improper taping of his conference with Mr. Williams. The district court denied Jenkins's motion to dismiss, but suppressed the portion of the tape depicting Jenkins's attorney-client conference with Mr. Williams, as well as the video portion of the remainder of the tape.

Before trial, the district court entered a sequestration order pursuant to Federal Rule of Evidence 615, under which all witnesses were excluded from the courtroom and were expressly forbidden from discussing their testimony with each other. At trial, four of the Government's witnesses were prisoners who testified that Jenkins had confessed to murdering Andre Weston. Two of these witnesses, Steve Johnson and Ricky Tyler, testified in exchange for the Government's promise to move for a reduction in their respective sentences. See Fed. R. Crim. P. 35. Another prisoner, John Cordero, was ordered to testify after he was granted immunity. The fourth"admission" witness, Jessie Lord, apparently received nothing in exchange for his testimony.

On October 23, 1997, a jury convicted Jenkins of all charges, including the murder charge. The district court then sentenced Jenkins to life imprisonment for the murder conviction, five years for possession of marijuana with intent to distribute, and ten years for being a felon in possession of a firearm and ammunition. Shortly after trial, Jenkins submitted to the district court the affidavit of John Cordero, who alleged that he, Lord, Johnson, Tyler, and another government witness, Harry Renwrick, had all discussed their testimony during the trial, while all five witnesses were being held in the same cell.

3

Cordero alleged that the witnesses had collaborated on how to testify falsely at trial.

On the basis of Cordero's affidavit, Jenkins moved for a new trial or for dismissal of the homicide charges. Additionally, Jenkins again raised his argument that the charges should be dismissed on the basis of the improper taping of his attorney-client conference with Mr. Williams. At the post-trial hearing, Jenkins called Renwrick, who testified that he had discussed only minor details of his testimony with the other prisoners who testified at trial. Jenkins also presented Lieutenant Harold Phillips, who had been the supervisor of officers McNair and Frier during the time the attorney-client conference was videotaped. Phillips testified to some of the circumstances regarding the videotaping incident, but invoked the Fifth Amendment as to other details of the incident.

The district court denied all of Jenkins's post-trial motions. With respect to the sequestration violations, the district court found that Cordero's affidavit was not credible. It further found, based on Renwrick's testimony, that any violations of the sequestration order had been "innocuous" or "very nominal" and had not prejudiced Jenkins. Further, the district court again rejected Jenkins's claim that the videotaping had violated his right to counsel.

Jenkins now appeals, arguing that his conviction should be overturned because (1) the Government violated 18 U.S.C.§ 201(c)(2) by offering several of its witnesses favorable treatment in exchange for their testimony; (2) the videotaping of Jenkins's attorney-client conference with Mr. Williams violated Jenkins's Sixth Amendment rights; and (3) several witnesses violated the district court's sequestration order.

II.

Jenkins devotes the bulk of his brief to the argument that his conviction must be overturned because some of the Government's witnesses testified in exchange for the Government's promise to move that the witnesses' sentences be reduced. Jenkins claims that this practice violates provisions of the federal bribery statute, 18 U.S.C.

4

§ 201; specifically, § 201(c)(2), which prohibits the giving of "anything of value" to a witness because of his or her testimony.**2**

Last year, a panel of the Tenth Circuit became the only court to adopt the argument made by Jenkins. The panel decision has since been vacated by the en banc court. See United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), rev'd en banc, 165 F.3d 1297 (10th Cir. 1999).**3** Significantly, this circuit has never followed the original Singleton panel decision, and we will not do so today.

In addition, Jenkins has a serious procedural problem in his presentation of this issue because he did not object on this ground to the testimony of the witnesses in question. Consequently, his current argument may stand only if permitting their testimony constitutes plain error. See United States v. Olano, 507 U.S. 725 (1993). Given that the rationale of the Singleton panel has never been adopted in this circuit, and that it is a flawed theory--as explained by the Tenth Circuit en banc and by all other circuits to consider the issue**4**--any argu-

_____

**2** The relevant portion of 18 U.S.C. § 201(c)(2) provides as follows:

> Whoever . . . directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath . . . given or to be given by such person as a witness upon a trial . . . shall be fined under this title or imprisoned for not more than two years, or both.

**3** The Singleton panel opinion rested on its reading of what, it determined, was the plain meaning of § 201(c)(2). Namely, it concluded that (1) "whoever" included Assistant United States Attorneys ("AUSAs") and that (2) an AUSA's promises not to prosecute certain offenses and to inform the authorities of the witness's cooperation were "thing[s] of value" given in exchange for trial testimony. 144 F.3d at 1345-51.

In reversing the panel, the en banc Tenth Circuit concluded that "whoever" does not include AUSAs appearing on behalf of the United States. 165 F.3d at 1299-1300. The court reasoned that "whoever" could not include AUSAs, as they are, in effect, the United States government, which cannot be subjected to criminal prosecution. Id. Further, the court reasoned that applying the statute to the United States would be absurd and would deprive the government of its "recognized or established prerogative" to grant a witness leniency in exchange for his or her testimony. Id. at 1300-01.

**4** **E.g.**, United States v. Condon, No. 97-3378, 1999 WL 118719 (7th Cir. Mar. 9, 1999); United States v. Johnson , No. 98-2671, 1999 WL

5

able error in admitting the testimony in question is not plain. This claim must be soundly rejected.

III.

Jenkins next argues that he is entitled to a new trial because a portion of a confidential conversation between Jenkins and his attorney was improperly recorded by the Lexington County sheriff's office. Jenkins claims that this recording interfered with his right to consult privately with his attorney, thereby violating the Sixth Amendment's guarantee of effective assistance of counsel. We reject this claim for relief.

Although all agree that the videotaping of Jenkins's confidential conversation was improper, this impropriety did not automatically violate Jenkins's Sixth Amendment rights: "`Not all government interference with the attorney-client relationship,' however, `renders counsel's assistance so ineffective as to violate a defendant's sixth amendment right to counsel.'" United States v. Chavez, 902 F.2d 259, 266 (4th Cir. 1990) (quoting Hall v. Iowa, 705 F.2d 283, 290 (8th Cir. 1983)). Instead, such interference does not create a Sixth Amendment claim unless the defendant makes "some showing of prejudice." Chavez, 902 F.2d at 266 (citing Weatherford v. Bursey, 429 U.S. 545, 558 (1977)).

Here, Jenkins has presented no evidence of prejudice. To the contrary, after separate pre-trial and post-trial hearings on the issue, the district court twice found that none of the Government's evidence derived from the improperly recorded conversation. Such factual findings, which Jenkins has not shown to be clearly erroneous, defeat Jenkins's argument. See Weatherford, 429 U.S. at 556 (defendant's Sixth Amendment claim defeated by district court's findings that Government did not use information gained from defendant's attorney-client conversation).

_____

55234 (8th Cir., Feb. 8, 1999); United States v. Lowery, 166 F.3d 1119 (11th Cir. 1999); United States v. Ramsey, 165 F.3d 980 (D.C. Cir. 1999); United States v. Webster, 162 F.3d 308 (5th Cir. 1998); United States v. Ware, 161 F.3d 414 (6th Cir. 1998).

6

Jenkins nevertheless urges us to presume that the videotaping prejudiced his rights because the officers apparently responsible for the taping refused to testify, invoking their Fifth Amendment rights. Although the officers' refusal to testify no doubt hampered Jenkins's attempt to prove prejudice, no authority suggests that we should, as a result, presume that prejudice occurred. In fact, the Supreme Court has disapproved of such presumptions of prejudice. See id. Consequently, we decline Jenkins's invitation to resurrect this invalidated presumption, and we reject his argument on this issue.

IV.

Finally, Jenkins argues that the district court erred in failing to grant him a new trial because, he maintains, several of the Government's witnesses violated the district court's sequestration order. Specifically, Jenkins claims that witnesses Cordero, Lord, Tyler, Renwrick, and Johnson discussed their testimony in violation of the sequestration order. In support of this argument, Jenkins submitted Cordero's affidavit, in which Cordero alleges that he and the other witnesses violated the sequestration order. After a post-trial hearing on the matter, during which Renwrick was examined by both sides, the district court refused to grant a new trial.

When a district court discovers that its sequestration order has been violated, the court may exercise its discretion in crafting an appropriate remedy. See United States v. Leggett, 326 F.2d 613 (4th Cir. 1964) (choice of remedy "depends upon the particular circumstances and lies within the sound discretion of the trial court"). We therefore review the district court's resolution of this issue for abuse of discretion.

We cannot say that the district court abused its discretion in refusing to grant Jenkins a new trial. After reviewing Cordero's affidavit and after hearing Renwrick's testimony about his conversations with the other witnesses, the district court determined that Jenkins had not been prejudiced by those conversations. In making this ruling, the district court noted that prejudice was unlikely because the subject matter of the individual witnesses' testimony had not overlapped significantly: "All of these guys that testified saw the same smoking gun, but they saw it at different times from different angles and they

7

described it in entirely different terms." Indeed, the only overlap of testimony was that both Cordero and Lord testified that Jenkins had asked how to get blood out of a car. Where factual overlap between witnesses' testimony is nonexistent or minimal, sequestration order violations are unlikely to "undermine[ ] the integrity of the fact-finding process." United States v. Kosko, 870 F.2d 162, 164 (4th Cir. 1989). As a result, we conclude that the district court was well within its discretion in finding that Jenkins had not been prejudiced by the alleged sequestration violations and, consequently, in denying Jenkins a new trial.

Jenkins counters that United States v. Farnham requires us to presume that any violation of a sequestration order is prejudicial. See 791 F.2d 331, 335 (4th Cir. 1986). While we did presume prejudice from the particular violation at issue in Farnham, we did not establish the per se rule for which Jenkins argues. In Farnham , we presumed that the defendant had been prejudiced by the district court's improper refusal to sequester one of two agents who were scheduled to testify for the Government. Because there was no sequestration, the first agent was able to listen to the entire testimony of the second agent before giving his own testimony. As a result, we concluded that the defendant in Farnham would have found it"almost impossible" to prove that he had been prejudiced by the district court's failure to sequester, thus we presumed that the district court's error prejudiced the defendant. 791 F.2d at 335.

But the Farnham presumption does not apply in all cases. For example, we have refused to presume prejudice--and specifically refused to invoke Farnham's rule--when it appears that "the discussions that took place between the witnesses had no substantial influence on the jury verdict." United States v. Harris, 39 F.3d 1262, 1268 (4th Cir. 1994).

Furthermore, Jenkins did not face the near impossibility of proving prejudice that Farnham faced. Jenkins had the opportunity to call each of the five allegedly tainted witnesses at the post-trial hearing; he called only Renwrick, whose testimony did not corroborate Cordero's affidavit. Additionally, each of the witnesses in question had submitted statements to the investigating authorities long before trial, and Jenkins has failed to point to any detail in which the witnesses' trial

8

testimony varied from their pre-trial statements. As a result, Jenkins simply has not shown how the discussions that Cordero describes in his affidavit improperly affected any testimony. Accordingly, we cannot conclude that any such discussions had a substantial effect on the jury verdict. Harris, 39 F.3d at 1268. We therefore reject Jenkins's claim that the district court abused its discretion in denying Jenkins a new trial on this basis.

V.

Pursuant to the foregoing, the assertions of error made by Jenkins are all rejected, and his convictions are affirmed.

AFFIRMED

9