UNITED STATES of America,
Plaintiff-Appellant,

v.

James Arthur FRIEDHABER,
Defendant-Appellee.

No. 86–5657.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1987.

Decided Aug. 13, 1987.

Rehearing In Banc Granted
Nov. 20, 1987.

Kieran Joseph Shanahan, Asst. U.S. Atty.; John Stuart Bruce, Asst. U.S. Atty. (Samuel T. Currin, U.S. Atty., Raleigh, N.C., on brief) for plaintiff-appellant.

William Joseph Boney, Jr., Wilmington, N.C., for defendant-appellee.

Before HALL and SPROUSE, Circuit Judges, and TIMBERS, Senior United States Circuit Judge of the U.S. Court of Appeals for the Second Circuit, sitting by designation.

SPROUSE, Circuit Judge:

The United States appeals from the judgment of the district court granting James Arthur Friedhaber's motion for judgment of acquittal. F.R.Crim.P. 29. A jury had returned a guilty verdict against Friedhaber on a single count of making false statements before a grand jury. 18 U.S.C. § 1623.[1] The district court set aside the jury's verdict, ruling that Friedhaber's false statements were not material to the grand jury's investigation. We affirm.

Friedhaber testified before a grand jury in its investigation of Thomas E. Gilbert, III, and Thomas E. Gilbert, IV, who were suspected of and subsequently indicted for arson and mail fraud in connection with the burning of the Gilbert Funeral Home in Southport, North Carolina on August 11, 1984. Friedhaber was not a suspect in the grand jury probe, but was later indicted and tried for falsely relating to the grand jury the details of an interview he had with

---

1. 18 U.S.C. § 1623 provides in pertinent part: "Whoever under oath ... in any proceeding before ... any ... grand jury of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1623(a).

two individuals that were investigating the fire.[2]

Friedhaber, an air conditioning and heating repairman, replaced a motor in an air conditioner at the funeral home a few days prior to the fire. He went to the funeral home on the day of the fire to deliver a bill for his services. He arrived at the home between 10:00 and 10:30 in the morning, found no one was there, left the bill on a desk, and departed. The fire was discovered at approximately 12:15 p.m. Friedhaber was one of only two persons known to have been present in the funeral home on the morning of the fire.

The S.B.I. agent and the insurance company investigator, working together, interviewed Friedhaber on September 6, 1984, some three weeks after the fire. According to their grand jury and trial testimony, Friedhaber told them during the interview that he neither saw nor smelled anything unusual at the funeral home on the day of the fire.

Friedhaber appeared before the grand jury investigating the Gilberts in early June 1986. He testified that while present in the funeral home on the morning of the fire he had smelled a pungent odor similar to burning trash. He denied telling the S.B.I. and insurance company investigators in their September 1984 interview that he smelled nothing unusual.[3] According to his testimony, Friedhaber mentioned the pungent odor in the course of the interview, but the investigators failed to make a note of it.

Based on this testimony, Friedhaber was subsequently indicted for making false statements before the grand jury in violation of 18 U.S.C. § 1623. The indictment charged that it was material to the grand jury's investigation to determine what Friedhaber reported to the investigators "concerning what, if any, strange odors he detected in the Gilberts funeral home shortly before the fire." [4]

█ The sole issue on appeal is whether Friedhaber's false testimony was material

2. The two investigators were Tim Batchelor, an agent of the North Carolina Bureau of Investigation (S.B.I.), and Gary Moss, a private investigator employed by the insurance carrier that covered the funeral home.

3. The government's theory was that kerosene was used to ignite the fire. It contends that Friedhaber's original version—that he had smelled nothing unusual—was consistent with the theory of a kerosene origin. A pungent smell conversely would be probative of an origin other than kerosene.

4. The following portions of Friedhaber's testimony formed the basis of the government's case against him:

Q. Let me ask you if you gave a statement regarding what you saw and observed, to the S.B.I., and in particular, when he was with Mr. Moss, about what your activities [sic] were shortly after the fire? Do you remember talking with them, them coming and interviewing you?:
A. Yeah, sure so.
Q. And do you recall him specifically asking you whether you were aware of any odors and that you responded that there were none?
A. Yeah, I remember this.
Q. And you stated you did not notice any strange odors at the time you delivered the bill, and that you did not see anything unusual in the funeral home?
A. *No, that's not correct?*

Q. That's not what you told them?
A. *No.*
Q. Okay, now wasn't that conversation tape recorded?
A. No, he was writing all the time, he wasn't tape recording.
Q. Okay. What is incorrect about that statement?
A. *I told him the same thing I told you, that is smelled like a pungent odor, different.*
Q. You told that both to this S.B.I. officer and to Mr. Moss?
A. *Yes.*
Q. So, both of them would be incorrect?
A. *Yes.*
Q. Would they be lying?
A. I couldn't say that.
Q. But it's your testimony that that's not what you told them?
A. *That's not what I told them, no.*
Q. You told them that you had smelled this faint odor which you couldn't describe except for it as being something that was smouldering.
A. *Un—Huh (yes).*
Q. But you didn't investigate it?
A. No.
Q. Why do you think that they would state to the contrary?
A. *I really don't know.* It was late at night, dark, and he was taking notes in the car. *I don't know maybe he missed something or —questions were flying back and forth—I don't know. But that's something that I smelled and I told the guys I did, and they didn't write it down.*

to the grand jury investigation. The test of materiality under 18 U.S.C. § 1623 is whether the testimony has "the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." *United States v. Farnham,* 791 F.2d 331, 333 (4th Cir.1986) (quoting *United States v. Paolicelli,* 505 F.2d 971, 973 (4th Cir.1974)). It is not necessary that the government prove that the false testimony actually impeded the work of the grand jury. *United States v. Abrams,* 568 F.2d 411 (5th Cir.), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). There must, however, be a minimal showing that the testimony at issue had the capacity to affect the outcome of the grand jury's investigative proceedings. *See United States v. Flowers,* 813 F.2d 1320, 1326 (4th Cir.1987) (although the government ordinarily bears a light burden in proving materiality, the burden was not met because the defendant's statements were incapable of influencing the outcome of the proceeding). We agree with the district court that the government failed to make the requisite showing in this case.

■ Friedhaber was not indicted for impeding the investigation of the S.B.I. or insurance company agent, nor could he have been.[5] He was indicted as a consequence of his grand jury testimony concerning the statements he made to the investigators. The grand jury was impaneled to investigate the origin of the funeral home fire. The funeral home owners were the target of the investigation, and they were later indicted.[6] In his grand jury testimony, Friedhaber recalled smelling a pungent odor on the morning of the fire. Although Friedhaber insisted that he gave the same description to the investigators, they testified to the contrary, and the government prosecutor attacked Friedhaber's credibility with his prior inconsistent statements. At bottom, Friedhaber's testimony amounts to a faulty, or even evasive, recollection of an event that was simply inconsequential to the grand jury investigation. There is nothing to suggest that it had the capacity to affect the outcome of the grand jury's investigation.

Congress, in enacting § 1623 and its predecessors, recognized the importance of preserving the integrity of the grand jury process. We likewise recognize the importance of preventing witnesses from abusing their responsibility to testify truthfully before the grand jury. We cannot say, however, that the statements for which Friedhaber was indicted were material to the grand jury's inquiry; therefore, they do not constitute an abuse for which he should be held criminally responsible.

The judgment of the district court is therefore affirmed.

AFFIRMED.

K.K. HALL, Circuit Judge, dissenting:

As the majority correctly recognizes, the government's responsibility for demonstrating materiality in a case brought pursuant to 18 U.S.C. § 1623 imposes but a slight burden. The prosecution need only establish that the false statements had the capacity to impede the work of the grand jury. Criminal culpability turns upon the potential rather than the actual effect of perjurious remarks. In this instance, I believe that the materiality of the defendant's statements was thoroughly established.

Friedhaber testified before a grand jury that was investigating the possibility of arson at the Gilbert Funeral Home. As one of the only two people known to have been in the building immediately before the fire, his testimony was of obvious significance. By maintaining that he had smelled a "pungent odor" similar to burning trash in the funeral home, the defendant impliedly suggested that the fire was of a natural origin and not a kerosene fire as alleged by the government. When confronted with an apparent inconsistency between his grand jury testimony and prior statements

---

5. As the trial court correctly observed, "the perjury [sic] statute does not proscribe the giving of conflicting statements by witnesses to investigators ... [i]t only prohibits the giving of false material declarations to the grand jury."

6. At the time of oral argument, the Gilbert prosecution had yet to be presented for trial.

made to investigators immediately after the fire, Friedhaber sought to deny the existence of any inconsistency. He maintained that he had told the "pungent odor" story in response to all investigative questioning.[1]

It is important to remember that the perjury for which Friedhaber was charged and convicted was not the "pungent odor" story but rather his claim that he had told the same story to all investigators. I completely agree with the government's contention that the defendant's statement, if believed, would have the natural effect of bolstering his credibility on an issue central to the grand jury's inquiry while simultaneously undermining the credibility of the government's investigators.

In ruling on Friedhaber's Rule 29 motion, the district court stated that "no evidence was presented at trial to show how the defendant's alleged false statement has adversely affected ... [the grand jury's] work." Although it acknowledged the proper standard for § 1623 materiality, the district court revealed, by that statement, that it had erroneously considered actual rather than potential interference with the grand jury.

The majority opinion approaches the same error. It notes that the targets of the grand jury investigation were indicted for arson notwithstanding Friedhaber's testimony. That fact is, of course, irrelevant to a determination of materiality under § 1623. The only question before us is whether the defendant's attempt to sustain his credibility by recourse to perjury could have the capacity to affect the grand jury's deliberations. In my view, the potentially harmful impact of such perjury is clear.

Accordingly, I would reverse the district court's grant of the Rule 29 motion and remand for reinstatement of the jury's verdict. I, therefore, respectfully dissent.

---

**1.** The first record of the "pungent odor" story appears in statements made by Friedhaber in February, 1986, to a private investigator retained by the Gilberts in connection with a civil suit against their fire insurance carrier.