UNITED STATES of America,
Plaintiff–Appellant,

v.

James Arthur FRIEDHABER,
Defendant–Appellee.

No. 86–5657.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 1, 1988.

Decided Sept. 9, 1988.

John Stuart Bruce, Asst. U.S. Atty., Chief Criminal Section (Samuel T. Currin, U.S. Atty., Kieran Joseph Shanahan, Asst. U.S. Atty. Raleigh, N.C., on brief), for plaintiff-appellant.

William Joseph Boney, Jr. (Mason & Boney Wilmington, N.C., on brief), for defendant-appellee.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges, sitting en banc.

K.K. HALL, Circuit Judge:

At his trial in September of 1986, James Arthur Friedhaber was found guilty by a jury of making false statements to a grand jury of the United States in violation of 18 U.S.C. § 1623. The district judge, however, set aside the verdict and entered an order of acquittal pursuant to Fed.R.Crim. P. 29(b), concluding that Friedhaber's false statements had not been "material." The United States appealed and a divided panel of this Court affirmed the district court's determination in *United States of America v. James Arthur Friedhaber*, 826 F.2d 284 (4th Cir.1987). A majority of this Court having now voted to rehear the government's appeal *en banc*, we reconsider the issue and reverse.

I.

Friedhaber's testimony before a federal grand jury stemmed from an investigation of a fire that destroyed a funeral home in Southport, North Carolina, on August 11,

1984. The owners of the funeral home, Thomas E. Gilbert III and Thomas E. Gilbert IV, ("the Gilberts") had become targets of the investigation after it was learned that the fire appeared to have been purposely set with multiple points of origin and accelerated with kerosene. The Gilberts were subsequently indicted on a variety of charges, including conspiracy to commit arson, arson, and mail fraud in connection with an effort to collect insurance proceeds from the fire.

Friedhaber, an unlicensed air conditioning and heating repairman, had delivered his bill for certain repair work to the funeral home between 10:00 a.m. and 10:30 a.m. on August 11, 1984. As one of only two people known to have been in the building before the fire was discovered around 12:15 p.m., he was subsequently interviewed by Tim Batchelor, an agent for the North Carolina State Bureau of Investigation, and Gary Moss, a private investigator employed by the carrier of the funeral home's fire insurance. At the September 6, 1984, interview, Friedhaber stated that while he was in the building he neither saw nor smelled anything unusual and that "everything appeared to be okay."

In February, 1986, Friedhaber was interviewed by Charles Beck, a private investigator retained by the Gilberts in connection with a civil suit against their fire insurance carrier. Friedhaber informed Beck that on the day of the fire he had smelled a "pungent odor" in the funeral home like "an old barrel that had a fire in it." He further described the odor as "a stale smell like old burning trash" somewhat akin to insulation smoldering in the walls.

On June 4, 1986, Friedhaber was subpoenaed to appear before the grand jury. In his subsequent testimony, Friedhaber again stated that he had smelled a pungent odor like an old garbage barrel in the funeral home on the day of the fire. When confronted with the apparent inconsistency between his testimony and his statement of September 6, 1984, Friedhaber denied that he had given a different account to Batchelor and Moss. Friedhaber insisted that he had told the investigators about the pungent odor but they had failed to write it down.

On June 18, 1986, Friedhaber was indicted for making false statements to the grand jury. The indictment specifically charged that his denial of inconsistent statements was both false and material to the government's investigation of the fire at the Gilbert Funeral Home. Following his indictment, Friedhaber allegedly admitted to government agents that he had not told Batchelor and Moss about the pungent odor described to the grand jury.

At trial, Friedhaber argued that even if the falsity of his statement was conceded,[1] his denial of inconsistency could not be considered material to the grand jury's deliberations. Accordingly, at the close of the government's presentation, he moved for an immediate order of acquittal pursuant to Fed.R.Crim.P. 29.[2] The district judge reserved ruling on the motion and sent the case to the jury. After the jury returned a verdict of guilty, the court immediately granted the Rule 29(b) motion, noting that no evidence had been presented "to show how defendant's allegedly false

---

1. Although Friedhaber continued to deny at trial that his statement to the grand jury had been untrue, he does not contest, on appeal, the trial jury's contrary conclusion.

2. Fed.R.Crim.P. 29 states in pertinent part:
   **Rule 29. Motion for Judgment of Acquittal**
   **(a) Motion Before Submission to Jury.** Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insuffi-

cient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.
   **(b) Reservation of Decision on Motion.**
   If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.

statement has adversely affected ... [the grand jury's] work."

This appeal by the United States pursuant to 18 U.S.C. § 3731 [3] followed.

### II.

██ Our concern today is not with determining the law, but rather with its correct application. The essential elements of a violation of 18 U.S.C. § 1623 have been firmly established. The government must prove:

1. That the defendant's testimony was given under oath before a grand jury;
2. That the testimony given was false in one or more of the respects charged;
3. That the false testimony was knowingly given; and
4. The subject matter of the testimony was "material" to the grand jury's investigation.

Materiality has also been expressly defined in this Circuit as the "natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation." *United States v. Paolicelli*, 505 F.2d 971, 973 (4th Cir.1974). The inquiry into materiality assesses potential. It considers whether the false statement was "capable of influencing the grand jury on the issue before it." *United States v. Bailey*, 769 F.2d 203 (4th Cir.1985).

On appeal, the government argues that although the district court cited the proper law, its Rule 29 order erroneously relied on the lack of *actual* effect of Friedhaber's perjury. The government further contends that the defendant's false statement must be regarded as material because it bolstered his own credibility as a key witness while undermining that of the investigating agents. We find the government's position persuasive.

Clearly, by noting both the absence of adverse affect and the fact that the government could still continue with its investiga-

tion of the Gilberts through the sitting grand jury, the district court did examine, in at least some fashion, the actual effect of Friedhaber's testimony. That issue was, of course, irrelevant to a proper inquiry into Section 1623 materiality. The critical error in the district court's reasoning, however, was not in merely considering the actual effect of Friedhaber's perjury, but in undervaluing the potential effect of the defendant's misstatements. We are fully satisfied that Friedhaber's false testimony was capable of improperly influencing the grand jury.

It is important to remember that the perjury for which Friedhaber was convicted was not the "pungent odor" story itself, but rather his claim that he had told that same story to all investigators. As a witness who had been in the funeral home immediately before the fire, his testimony regarding possible causes was of obvious significance. By testifying that he had smelled an odor similar to burning trash or smoldering insulation, the defendant impliedly suggested that the fire was of a natural origin and not a kerosene-accelerated fire, as alleged by the government. His subsequent insistence that he had consistently given the same account of the events of August 11, 1984, would, if believed, have substantially enhanced his credibility while simultaneously impeaching the credibility of Batchelor and Moss. Surely, that must be regarded as material. *See e.g. United States v. Berardi*, 629 F.2d 723 (2nd Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980).

### III.

We, therefore, conclude for the foregoing reasons that the decision of the district court to grant Friedhaber's Rule 29 motion for acquittal must be reversed. The case is hereby remanded to the district court with instructions that the jury's verdict of guilty be reinstated.

REVERSED AND REMANDED.

---

**3.** 18 U.S.C. § 3731 provides in pertinent part that:

> In a criminal case, an appeal by the United States shall lie to a court of appeals from a decision, judgment or order dismissing an in-

> dictment ... after verdict or judgment ... except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent. As the majority observes, this appeal does not involve the meaning of a basic rule of law. It involves instead the issue whether the rule governing materiality under 18 U.S.C. § 1623 was applied correctly by the district court when it granted Friedhaber's motion for judgment of acquittal. I believe the district court rightly applied that well-recognized rule to correct an ill-advised prosecution, and I would affirm.

I, of course, do not quarrel with the majority's statement that materiality has been defined in this Circuit as the "natural effect or tendency to impede, influence, or dissuade the grand jury from pursuing its investigation." *United States v. Paolicelli*, 505 F.2d 971, 973 (4th Cir.1974). I likewise agree that the burden this imposes on the Government is not a heavy one. When Congress included the materiality requirement in the statute, however, it did not intend that every false statement would rise to the level of a criminal offense. In keeping with Congress' intent, we have held that for false testimony to be punishable under § 1623, there must be a showing that the testimony had the capacity to affect the outcome of the grand jury's investigative procedures. *United States v. Flowers*, 813 F.2d 1320, 1325–26; *United States v. Bailey*, 769 F.2d 203, 203 (4th Cir.1985) (per curiam). In my view, there was not here even a minimal showing of that capacity.

The grand jury was impaneled to investigate the origin of the funeral home fire some two years after the fire had occurred. The funeral home directors were the target of the criminal investigation and they were later indicted and convicted. Friedhaber was never even suspected of participating in the criminal acts which were undergoing grand jury scrutiny nor of any collusion with the owners. He was simply an independent workman unexpectedly involved in the web of three investigations instigated and executed at cross purposes.

Friedhaber had several opportunities to tell his story of what he observed on the day of the fire. He was interviewed by insurance company and state investigators shortly after the fire in 1984. He later was interviewed by an investigator hired by the funeral home owners in connection with their insurance claim. He also was interviewed by an agent of the Bureau of Alcohol, Tobacco, and Firearms (BATF) in preparation for his testimony before the grand jury.

The jury in Friedhaber's trial found that in his initial interview in 1984, he did not mention having smelled a pungent odor on the morning of the fire. It is undisputed that on each of the other occasions Friedhaber stated that he had smelled the pungent odor. The Government has not charged Friedhaber with lying about whether he in fact smelled the odor, and there is no evidence in the record to support such a charge. The false testimony for which Friedhaber was convicted is his testimony to the grand jury that he told the state and insurance investigators about the odor during his 1984 interview.[1] The Government's burden was to show that Friedhaber's false statement was capable of influencing the grand jury's decision on the issues before

1. The following portions of Friedhaber's testimony formed the basis of the Government's case against him:

Q. Let me ask you if you gave a statement regarding what you saw and observed, to the S.B.I., and in particular, when he was with Mr. Moss, about what your activities [sic] were shortly after the fire? Do you remember talking with them, them coming and interviewing you?:
A. Yeah, sure so.
Q. And do you recall him specifically asking you whether you were aware of any odors and that you responded that there were none?
A. Yeah, I remember this.

Q. And you stated you did not notice any strange odors at the time you delivered the bill, and that you did not see anything unusual in the funeral home?
A. *No, that's not correct?*
Q. That's not what you told them?
A. *No.*
Q. Okay, now wasn't that conversation tape recorded?
A. No, he was writing all the time, he wasn't tape recording.
Q. Okay. What is incorrect about that statement?

it. *Flowers*, 813 F.2d at 1324; *Bailey*, 769 F.2d at 203.

Obviously, the grand jury was not investigating the truth or falsity of Friedhaber's statement to the investigators—even if it was false, he had committed no crime. The grand jury was investigating arson related offenses—crimes of which Friedhaber never was suspected. That the initial interview by the state and insurance company investigators was not conducted to assist a future grand jury investigation proceeding is beyond question. Friedhaber testified that he did in fact smell the pungent odor on the morning of the fire and, of course, that testimony was uncontradicted. I simply am not persuaded that his testimony about what he told the state and insurance investigators two years earlier could reasonably be thought capable of affecting the outcome of the grand jury's deliberations concerning whether the funeral home owners had committed arson.

Moreover, the Government's conduct itself suggests that Friedhaber's false statement was not material. Friedhaber informed the BATF agent shortly before the grand jury hearing the exact details of his contemplated testimony. Nevertheless, the Government chose to call Friedhaber to give that testimony, even though it could have in no way assisted in obtaining an indictment of the targets of the grand jury investigation.

The Government emphasized in their brief before this court that the BATF agent "specifically advised Friedhaber that if he lied to the grand jury, he would be subjecting himself to a charge of perjury." In the face of the Government agent's "advice," Friedhaber maintained his version of

the 1984 interview and his testimony resulted in the current charges being brought against him. Rather than enforcing the Government's position, the "counseling" by the federal agent concerning the criminal problem Friedhaber might face if he stuck to his intended testimony, raises the specter that questionable pressure may have been exerted on a prospective grand jury witness. To my mind, Friedhaber's conviction conveys one unfortunate message—it might further the self interest of a prospective grand jury witness to carefully reexamine any recollection which conflicts with a prosecutor's theories concerning a suspected crime.

I am authorized to say that Judge WIDENER, Judge PHILLIPS, Judge ERVIN, and Judge WILKINSON join in this dissent.

---

A. *I told him the same thing I told you, that is smelled like a pungent odor, different.*

Q. You told that both to this S.B.I. officer and to Mr. Moss?

Q. So, both of them would be incorrect?

Q. Would they be lying?

A. I couldn't say that.

Q. But it's your testimony that that's not what you told them?

A. *That's not what I told them, no.*

Q. You told them that you had smelled this faint odor which you couldn't describe except for it as being something that was smouldering.

A. *Un—Huh (yes).*

Q. But you didn't investigate it?

Q. Why do you think that they would state to the contrary?

A. *I really don't know.* It was late at night, dark, and he was taking notes in the car. *I don't know maybe he missed something or—* questions were flying back and forth—*I don't know. But that's something that I smelled and I told the guys I did, and they didn't write it down.*