953 F.2d 641
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
James Timothy POTTER, Defendant-Appellee.
 No. 91-5067.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1991.
Decided Jan. 15, 1992.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern, No. CR-90-54-4, Malcolm J. Howard, District Judge.
 Argued: John Stuart Bruce, First Assistant United States Attorney, Raleigh, N.C., for appellant; Fred Warren Harrison, Harrison & Simpson, P.A., Kinston, N.C., for appellee.
 On Brief: Margaret Person Currin, United States Attorney, Linda Kaye Teal, Assistant United States Attorney, Raleigh, N.C., for appellant.
 E.D.N.C.
 REVERSED AND REMANDED.
 Before WIDENER and LUTTIG, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Appellee James Timothy Potter was convicted in the United States District Court for the Eastern District of North Carolina on one count of making a false statement to a bank in connection with a loan application and on two counts of making a false statement to a federal grand jury. The district court granted appellee's motion for judgment of acquittal following conviction. The United States appeals that judgment. We reverse.
 
 I.
 
 2
 A fire destroyed appellee's furniture store on May 24, 1987. Approximately three months later, a grand jury empaneled in the Eastern District of North Carolina began investigating the possibility that appellee had intentionally set the store afire for the purpose of collecting insurance proceeds. On December 12, 1990, appellee was charged in a nine-count indictment with arson, mail fraud, bank fraud, and perjury. J.A. at 8-26.[1] On April 17, 1991, following a trial by jury, appellee was convicted on one count of bank fraud and two counts of perjury. The jury acquitted appellee on the counts of arson and mail fraud, and on one count of bank fraud. Appellee moved for judgment of acquittal on the bank fraud and perjury counts on which he had been convicted, see Fed.R.Crim.P. 29(c), and the district court granted the motion. The Government appeals the district court's judgment of acquittal. See 18 U.S.C. § 3731.
 
 
 3
 This court will not disturb a judgment of acquittal following a guilty verdict unless there is substantial evidence in the record to support the jury's finding of guilt beyond a reasonable doubt. United States v. Garcia, 868 F.2d 114, 115 (4th Cir.), cert. denied, 490 U.S. 1094 (1989); United States v. Steed, 674 F.2d 284, 286 (4th Cir.) (en banc), cert. denied, 459 U.S. 829 (1982). We must decide, therefore, "whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982).
 
 
 4
 The Government asserts that there is substantial evidence in the record to support the jury's guilty verdict. We agree, and therefore reverse.
 
 II.
 A.
 
 5
 Count Two of the indictment charged appellee with falsely stating his total liabilities on a loan application, in violation of 18 U.S.C. § 1014. The indictment charged that Potter failed to disclose to First American Savings Bank ("First American") a total indebtedness to First Citizens Bank ("First Citizens") of $62,764, the monthly payments on which were $1,400. In order to obtain a conviction under section 1014, the Government must prove beyond a reasonable doubt (1) that the defendant made a false statement to a federally insured bank; (2) that the false statement was made for the purpose of influencing the bank's action; (3) that the false statement was made knowingly; and (4) that the statement was false as to a material fact. United States v. Whaley, 786 F.2d 1229, 1231 (4th Cir.1986).
 
 
 6
 The district court did not specify the element or elements of the bank fraud count with respect to which it held that there was insufficient evidence as a matter of law. It appears from the court's virtually exclusive reliance upon the testimony of Seroba Aiken, the loan officer who assisted appellee, however, that the court concluded that there was no evidence from which a jury could find that appellee's false statement was knowingly made or material.[2] The court specifically referred to Ms. Aiken's testimony that she had known Potter all of his life; that she believed the loan was fully collateralized by the vehicle that Potter planned to purchase with the loan proceeds; and that she did not believe that Potter intentionally misled her on the application. J.A. at 1106. The court seemed to find particularly significant the testimony that Ms. Aiken did not believe that appellee intended to mislead her. It apparently found it difficult to believe that any reasonable person could conclude that appellee knowingly made a false statement to an individual whom he had known all of his life and, even if he did, that the statement could be considered material given that the loan was fully collateralized by the vehicle acquired with the loan proceeds.
 
 
 7
 We believe the district court erred in holding that there was insufficient evidence as a matter of law to support the jury's verdict. Reasonable jurors could have inferred that Potter knowingly made the false statement from the fact that he was a frequent borrower and familiar with loan applications and loan procedures; that the unreported First Citizens loans represented over eighty percent of his total liabilities;[3] that he had acknowledged the First Citizens indebtedness on a loan application completed less than three months earlier, id. at 48; that he was experiencing financial difficulties and was in need of loans; and that he had made a false statement on another financial document, id. at 324-25, 1069. The jurors also could have chosen, based upon the evidence that Ms. Aiken and appellee were life-long acquaintances, to doubt Ms. Aiken's testimony that she did not believe appellee had knowingly misled her. See Burks v. United States, 437 U.S. 1, 16 (1977) ("Even the trial court, which has heard the testimony of witnesses firsthand, is not to ... assess the credibility of witnesses when it judges the merits of a motion for acquittal."); United States v. Arrington, 719 F.2d 701, 704 (4th Cir.1983) ("We, of course, do not ... review the credibility of witnesses in resolving the issue of substantial evidence."), cert. denied, 465 U.S. 1028 (1984). In sum, there was ample evidence, if believed, to support the jury's finding that appellee knowingly made the false statement.
 
 
 8
 We also believe, contrary to the holding of the district court, that appellee's false statement was material.[4] The bank need not have relied upon the statement for it to have been material; it is sufficient that the statement had the capacity to mislead. United States v. Whaley, 786 F.2d 1229, 1232 (4th Cir.1986) ("[T]he requirement of materiality is satisfied if the misstatement had the capacity to mislead the lending institution."); United States v. Bonnette, 663 F.2d 495, 498 (4th Cir.1981), cert. denied, 455 U.S. 951 (1982). It is clear in the context of appellee's overall financial circumstances that his misrepresentation of liabilities by more than eighty percent at the very least could potentially have misled First American in its decision whether to extend credit to appellee. Assets and liabilities are determinants of loan repayment ability; if either is misstated, the individual's creditworthiness is potentially misrepresented. See Whaley, 786 F.2d at 1232 (for purposes of section 1014, misrepresentation as to liabilities on loan application has capacity to mislead).
 
 
 9
 Accordingly, we conclude that the district court erred in entering judgment of acquittal on Count Two.
 
 B.
 
 10
 Counts Five and Eight of the indictment charged appellee with making false statements to a grand jury regarding his 1985 and 1986 tax returns and his indebtedness at the time of the fire, in violation of 18 U.S.C. § 1623. In order to obtain a conviction under section 1623, the Government must prove beyond a reasonable doubt (1) that the defendant gave testimony to a grand jury under oath; (2) that the testimony was false; (3) that the false testimony was given knowingly; and (4) that the subject matter of the testimony was material to the grand jury's investigation. United States v. Friedhaber, 856 F.2d 640, 642 (4th Cir.1988) (en banc ).
 
 1.
 
 11
 Count Five of the indictment charged Potter with falsely testifying before a grand jury that he had filed his 1985 and 1986 tax returns. This charge was predicated on the following exchange between Potter and the Assistant United States Attorney ("AUSA"):
 
 
 12
 Q Who prepares your tax returns for you?
 
 
 13
 A Let's see, in 1984--I think--Lonnie Carraway did.
 
 
 14
 Q How about in 1985?
 
 
 15
 A That would have been 1985.
 
 
 16
 Q Mr. Carraway, in 1985, prepared your 1984 returns--is that what you are saying?
 
 
 17
 A I think. I cannot remember. Yes, I believe that is right. To the best of my ability, that is right.
 
 
 18
 Q Okay.
 
 
 19
 A And, then, I did 1986's because Lonnie quit--I think it was in 1984. Anyway, he quit doing them and then I started back doing them.
 
 
 20
 Q Why did he quit doing them?
 
 
 21
 A Because he quit doing any tax returns. I mean, he--see, he is a lawyer and a Certified Public Accountant and he started out doing tax returns and everything for everybody--and then he said that he was going to stop doing it for anybody and, so I had to do them myself.
 
 
 22
 Q So you filed your own 1986 and 1985 returns?
 
 
 23
 A Yes, sir.
 
 
 24
 J.A. at 890-91 (emphasis added).
 
 
 25
 The district court held that although appellee's statement that he had filed his 1985 and 1986 tax returns was false, it was neither knowingly made nor material:
 
 
 26
 The court has carefully studied the transcript of the grand jury proceeding and the colloquy between the testifying defendant and the Assistant United States Attorney ... and concludes that the statement which was, in fact, "false" was not knowingly given, and further that the statement was not material to the subject of the grand jury investigation, which the court concludes was the arson and mail fraud issues.
 
 
 27
 ... The court concludes that the false statement was not capable of influencing the grand jury on the issues before it.
 
 Id. at 1108-09.[5]
 
 28
 We believe that there was substantial evidence in the record to support the jury's finding that Potter knowingly made the false statement that he had filed his 1985 and 1986 tax returns. The Government introduced evidence that Potter had not in fact filed 1985 and 1986 tax returns; that he had sought and obtained a three-month extension of time for filing his 1985 return and that he was contacted by the Internal Revenue Service nine times after he failed to file the return, id. at 265; that he had earlier presented to First American Bank a document purporting to be a copy of a signed 1985 return in connection with a loan application, apparently to make his income appear greater than it actually was, id. at 75-76; and that he had provided inconsistent responses to questions about his tax returns in other contexts.[6] This is ample evidence from which the jury could have reasonably concluded that appellee knowingly made the false statement.
 
 
 29
 Appellee contends that he misunderstood the AUSA's final question from the colloquy quoted above. In particular, he claims that he understood the AUSA to be asking whether he had prepared the 1985 and 1986 returns, not whether he had filed the returns. He explains in support of this contention that the AUSA's question whether he had filed his returns represented an abrupt--and not easily discernible--shift from the immediately preceding series of questions, all of which were concerned with who had prepared appellee's various tax returns. Appellee's Br. at 11-12.
 
 
 30
 We agree with appellee that the shift in questioning was abrupt and potentially misleading, even if not intentionally so. The four questions preceding the question that elicited the alleged false statement all related to the preparation of appellee's returns. And the fifth question was framed by the AUSA in a manner that clearly suggested that he was only confirming his understanding from appellee's previous answers that appellee had prepared his 1985 and 1986 returns. Appellee therefore could easily, and reasonably, have misunderstood the question as merely seeking a reaffirmation of his earlier answers.
 
 
 31
 Our responsibility, however, is not to determine whether appellee misunderstood the question or even whether it would have been reasonable for him to have misunderstood the question, but only to determine whether there was substantial evidence from which a rational jury could have concluded that he knowingly testified falsely. We believe that the evidence recited above is substantial, and therefore sufficient to support the jury's verdict that Potter had in fact knowingly testified falsely.
 
 
 32
 The district court also held, as a matter of law, that Potter's false declaration was not material because it "was not capable of influencing the grand jury on the issues before it." J.A. at 1109.[7] We disagree.
 
 
 33
 A false statement is material if it has " 'the natural effect or tendency to impede, influence or dissuade the Grand Jury from pursuing its investigation.' " United States v. Paolicelli, 505 F.2d 971, 973 (4th Cir.1974) (quoting United States v. Stone, 429 F.2d 138, 140 (2d Cir.1970)). As under section 1014, see supra section II.A, it is the potential of the false statement to influence that is determinative of materiality. United States v. Friedhaber, 856 F.2d 640, 642 (4th Cir.1988) (en banc ).
 
 
 34
 Potter's false statement clearly was material under this standard. The grand jury was investigating whether Potter had committed various crimes, including arson. Central to its investigation into possible arson were subsidiary inquiries into whether he had a financial motive to commit arson and, ultimately, into whether he was testifying truthfully when he denied having committed this crime. Following Potter's testimony that he had filed the tax returns, the grand jury attempted unsuccessfully to locate the returns as part of its inquiry into Potter's financial condition. Appellant's Br. at 31-32. Therefore, the effect of Potter's false statement was in fact to impede the grand jury's investigation.[8] The knowledge that Potter had not filed his tax returns also would have borne at least indirectly, and adversely, on his credibility when he testified that he had not committed the crime. Whether or not this information would have influenced the grand jury in the conduct of its investigation (and we believe that it would have), it plainly had the potential to influence the investigation.
 
 
 35
 The district court accordingly erred in granting appellee's motion for acquittal as to Count Five.
 
 2.
 
 36
 Count Eight of the indictment charged appellee with making a false statement regarding his indebtedness at the time of the fire. That count was based upon appellee's answers during the following exchange with the AUSA:
 
 
 37
 Q Well, you just listed over a half a dozen pieces of property you own that generated over $1,000 that are worth over $200,000.
 
 
 38
 A Yes, sir.
 
 
 39
 Q You, certainly, had not lost everything that you owned.
 
 
 40
 A Well, no, but I--you know, if you look at your monthly payments, see how far that $1,000 goes on them. You know, I have got two payments that blow that rental income all to pieces.
 
 
 41
 Q Especially, if the business were failing prior to the fire.
 
 
 42
 A Well, if you will check my credit record and see that all my payments were up to date--I was not behind on any of my payments with my banks or credit companies or any of those I told you about or any that you can find anywhere. They were all current as of May 24th and, as of today, they are all behind because I do not have--well, I do have a job, but I make a minimum wage now.
 
 
 43
 J.A. at 908-09 (emphasis added). The evidence established that in fact appellee was not current on all of his payments as of May 24.
 
 
 44
 The district court acknowledged that appellee's false statement may have been material on the issue of motive, but concluded that there was insufficient evidence to support a finding that the statement was knowingly made. Id. at 1109-11. The court emphasized that "frequently during [Potter's] ... actual testimony ... [he] would not 'think through his answer' before responding to direct questions from the prosecuting attorney," id. at 1110,[9] and it concluded that "it is likely the defendant did not factually understand whether or not he was 'behind on any of (his) payments' at any point in his business history," id. The court also observed that
 
 
 45
 there was testimony received during the course of the trial from credit reporting agencies that, at the time of the fire, i.e., May 24, 1987, the defendant's credit record did not reflect a "bad" credit rating. In fact, it was showing no past due accounts. The particular response given by defendant to the question of the Assistant United States Attorney before the grand jury was prefaced with the phrase, "Well, if you will check my credit record and see that all my payments were up to date...." The court considers this preface to be the "caveat" to the response which is alleged to be false.
 
 
 46
 Id. at 1111.
 
 
 47
 We believe that reasonable jurors could have inferred that Potter's false statement was knowingly made from the fact that he was delinquent on the payments on at least six different loans at the time of the fire, id. at 82-85, 126-27, 315, 322; that at least nine of his furniture suppliers had contacted him about or had otherwise attempted to collect from him on overdue bills at or about the time of the fire, id. at 218-36, 245-60, 276-88, 294-304; that two of the suppliers had actually obtained judgments against him only eleven weeks before the fire, id. at 231, 237, 788, 796; and that he had an incentive to make the grand jury believe that his financial condition was sound, because a poor financial condition might suggest a motive for the arson. The district court's conclusion to the contrary, which was based in large part on its own interpretation of appellee's statements, see id. at 1111, and assessment of appellee's state of mind, see id. at 1110, was erroneous.
 
 CONCLUSION
 
 48
 We conclude for the reasons set forth above that there was substantial evidence in the record to support the jury's finding of guilt beyond a reasonable doubt on the counts of bank fraud and perjury. The judgment of acquittal is therefore reversed, and the case is hereby remanded to the district court with instructions to reinstate the jury's verdict.
 
 
 49
 REVERSED AND REMANDED.
 
 
 50
 WIDENER, Circuit Judge, and CHAPMAN, Senior Circuit Judge, joined.
 
 
 
 [1]
 Three of the perjury counts were dismissed prior to trial
 
 
 [2]
 There is no dispute that the statement was false. Nor could it be argued that there was insufficient evidence from which to conclude that the statement was made for the purpose of influencing the bank; the obvious purpose of all of appellee's statements on the application was to convince the bank that he was creditworthy
 
 
 [3]
 The only liabilities listed on the application totaled $13,696. J.A. at 861
 
 
 [4]
 The question of whether the false statement was knowingly made is a question of fact for the jury. Whether the statement was material, however, is a question of law to be decided by the court. United States v. Whaley, 786 F.2d 1229, 1231-32 (4th Cir.1986)
 
 
 [5]
 It is undisputed that appellee was under oath when he testified before the grand jury, and that his testimony was false in that he had not filed tax returns in 1985 or 1986. J.A. at 265-66
 
 
 [6]
 In a sworn statement on January 15, 1988, in connection with his insurance claim, appellee stated that copies of his tax returns for the years 1984 through 1986 had been burned in one or more fires. J.A. at 629. On March 2, 1990, appellee testified in a deposition in a civil suit over the collection of the insurance proceeds that copies of those returns might be in the possession of the Bureau of Alcohol, Tobacco and Firearms. Id. at 774-75
 
 
 [7]
 The materiality element of section 1623, like the materiality element of section 1014, see supra note 4, is a question of law, to be decided by the court. United States v. Farnham, 791 F.2d 331, 333 (4th Cir.1986)
 
 
 [8]
 The grand jury could have inferred from Potter's statement that he had filed the returns that his financial condition was sound (or at least not unsound) and, as a consequence, it might have abandoned or scaled back its investigation into financial motive for the arson. That the statement could have had this effect, alone, supports a conclusion that the statement was material
 
 
 [9]
 The court also based its judgment in part on the mistaken belief that Potter's "testimony before the grand jury concerned events happening more than three years" earlier. J.A. at 1110. Potter's false statement before the grand jury was made in September of 1987, only four months after the fire