STATE OF NORTH CAROLINA v. THOMAS GERALD BASDEN

No. 928SC612

(Filed 1 June 1993)

**Perjury § 12 (NCI4th) — grand jury testimony — hedging of false statements — materiality**

Defendant's answers of "No sir" to questions concerning a conversation about cocaine during testimony before the grand jury constituted "false statements" within the definition of perjury even though he hedged his answers when given second

opportunities to give truthful answers by stating "I don't think so" or "I don't recall saying that." Furthermore, defendant's answers met the materiality element of perjury where the grand jury was investigating the proliferation of drugs and drug offenses in the county and defendant's answers were capable of misleading or deceiving the grand jury as to whether a substance shown to defendant by another person was in fact cocaine and, if so, the amount thereof.

**Am Jur 2d, Perjury §§ 98-100.**

Appeal by defendant from judgment entered 26 February 1992 by Judge Henry L. Stevens, III, in Lenoir County Superior Court. Heard in the Court of Appeals 11 May 1993.

Defendant, Thomas Gerald Basden, was convicted of two counts of perjury and received a three year sentence at the 24 February 1992 Criminal Session of the Lenoir County Superior Court. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James P. Erwin, Jr., for the State.*

*Dal F. Wooten for defendant-appellant.*

JOHNSON, Judge.

The facts pertinent to this appeal are as follows: On 4 May 1987, Billy Ray Smith received 10 ounces of cocaine from Sidney Turnage and Vernon Rogers. Smith took the cocaine to his home, showed it to defendant and Darrel Rouse and proceeded to "cut one ounce." Billy Ray Smith was subsequently convicted of trafficking in cocaine and sentenced to 21 years in prison.

On 27 July 1988, Rita Smith, wife of Billy Ray Smith, was wired by detectives of the Kinston Police Department and went to see the defendant. During the course of the wired conversation, the following colloquy occurred:

Rita: Yeah, but like I said, if Billy Ray just hadn't got himself in this mess. He couldn't mess with just a little bit, he had to go big time.

Thomas: Well, he's been okay, I think.

STATE v. BASDEN

[110 N.C. App. 449 (1993)]

Rita: Which I didn't even know nothing about that time that he had those ten ounces, and he told me, he said, "Yeah, Thomas and Darrel were there." I said, "Well, where was I at?" "I don't know; you must have been gone to your mama's or somewhere," he said, you know, but—

Thomas: I wish I had 10 ounces like that right there cause they were bricks, little old bricks, prettiest I ever seen.

On 24 October 1988, defendant appeared before a special investigative grand jury convened in Lenoir County to conduct a broad based investigation of the proliferation of drugs and drug offenses in Lenoir County. Before testifying under oath, defendant was advised of his constitutional rights and of the scope of the investigation. Defendant was also informed that if he lied to the grand jury about a material fact, he would be subjecting himself to a possible charge of perjury. Defendant, after stating that he understood his rights, freely, knowingly, understandingly and voluntarily waived immunity from prosecution and waived any right to prevent the use of his testimony in any criminal proceeding.

The questioning of the defendant before the grand jury centered on his drug activities and those of Billy Ray Smith. Before the grand jury, the defendant testified, *inter alia*, that on a Saturday in May 1987 while he and Darrel Rouse were at Billy Ray Smith's home, Smith showed them a large quantity of cocaine, some 200 or 300 ounces.[1] Later in his testimony, however, defendant recanted this testimony by denying that the substance he observed was cocaine and by refuting and qualifying the quantity of cocaine he had allegedly seen in Smith's possession. Defendant was then questioned about the July 1988 conversation he had with Rita Smith regarding[2] the May 1987 events he had earlier testified about. Defendant's answers to the questions regarding the conversation with Rita Smith form the bases for the perjury charges:

INDICTMENT

THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 24th day of October, 1988 in Lenoir County Thomas Gerald Basden did unlawfully, wilfully, and feloniously commit per-

---

1. It appears defendant was confusing ounces with grams.

2. Rita Smith was wired with a recording device which picked up and recorded the soliloquy referred to in the indictment.

jury before Investigative Grand Jury 88IGJ1, Lenoir County, convened pursuant to N.C.G.S. 15A-623(b), where upon oath or solemn affirmation properly administered, he did falsely assert upon said oath a solemn affirmation that:

[FIRST COUNT]

Question: Did she tell you how much there was at the house that night?[3]

Answer: No sir.

Question: This time she came to talk to you, she didn't tell you how much there was?

Answer: I don't think so, I don't think so.

. . .

[SECOND COUNT]

Question: Did you not say to her that I wish I had ten ounces like that night because they are little old bricks, prettiest I ever seen?

Answer: No, sir.

Question: You never said that to her?

Answer: I don't recall saying that.

. . .

In the case *sub judice*, Rita Smith testified that she did in fact have a conversation with the defendant. She testified as to the substance of the conversation and that the conversation was recorded. The tape recording of the conversation was received into evidence, corroborating her testimony. Also, at defendant's trial in January 1990, on charges of trafficking in cocaine and possession of cocaine, defendant testified under oath that he gave false testimony to the investigative grand jury on 24 October 1988. Defendant offered no evidence at his trial for perjury. Defendant was convicted of the above two counts of felonious perjury and sentenced to three years.

---

3. This is a paraphrasing of a question asked as a statement, "Well, she was there at the house—telling you how much there was at the house that night."

Defendant contends that the trial court erred in denying his motion for dismissal made at the close of all the evidence for insufficiency of the evidence to sustain a conviction.

The question for the trial court upon defendant's motion to dismiss made at the close of all of the evidence, was whether there was substantial evidence of each element of the offense charged and of defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). In determining the sufficiency of the evidence, the trial court is to view all of the evidence in the light most favorable to the State and give the State all reasonable inferences that may be drawn from the evidence supporting the charges against the defendant. *Id.*

The essential elements of perjury are 1) a false statement under oath, 2) made knowingly, wilfully and designedly, 3) made in a proceeding in a court of competent jurisdiction, or concerning a matter wherein the affiant is required by law to be sworn, and 4) made as to some matter material to the issue or point in question. *State v. Smith*, 230 N.C. 198, 52 S.E.2d 348 (1949). It is defendant's contention that the statements he made to the grand jury as set out in the indictment against him were 1) not "false statements" within the definition of perjury; and 2) not material to the grand jury inquiry. We disagree.

To sustain a conviction for perjury, it is required that the falsity of the oath be established by the testimony of two witnesses, or by one witness and corroborating circumstances sufficient to turn the scales against the defendant's oath. *State v. Wilson*, 30 N.C. App. 149, 226 S.E.2d 518 (1976).

As to the first count of the indictment, when defendant was asked whether Rita Smith was there at the house telling him how much (cocaine) there was at the house that night, the defendant answered, "No, sir." When given the opportunity by a second question to give a truthful answer, defendant continued to deny the conversation by saying, "I don't think so, I don't think so." As to the second count, when defendant was asked if he told Rita Smith that he wished he had ten ounces (of cocaine) like that night because they are little old bricks, prettiest he had ever seen, defendant answered, "No, sir." When given an opportunity by a second question to give a truthful answer, defendant continued to deny the conversation by stating, "I don't recall saying that."

At defendant's trial, proof of the perjured grand jury testimony was made by the testimony of Rita Smith about the substance of her conversation with defendant, a tape recording of the conversation, and evidence that defendant testified under oath at a trial in January 1990 that he had given false testimony to the investigative grand jury on 24 October 1988.

Defendant argues that by using terms such as "I don't think so," or "I don't recall saying that," he qualified his responses, thereby removing the previous false statements from the realm of perjury. In our research, we find no North Carolina cases addressing this point. However, there is federal case law that we find instructive: *U.S. v. Nickles*, 502 F.2d 1173 (7th Cir. 1974), *cert. denied*, 426 U.S. 911, 48 L.Ed.2d 837 (1976) (holding that "hedging" after a direct answer does not prevent testimony from being considered perjurious); *U.S. v. Ponticelli*, 622 F.2d 985 (9th Cir. 1980), *cert. denied*, 449 U.S. 1016, 66 L.Ed.2d 476, *overruled on other grounds*, 730 F.2d 1255 (9th Cir. 1984) (holding that deception by the use of such precatory terms as "I believe" will not defeat a perjury charge); *U.S. v. Abrams*, 568 F.2d 411 (5th Cir.), *cert. denied*, 437 U.S. 903, 57 L.Ed.2d 1133 (1978) (demonstrating that an "I don't recall" answer may be held perjurious). We hold in the instant case, that defendant's equivocating statements of "I don't think so," and "I don't recall saying that," do not remove his false answers of "No, sir" from the realm of perjury.

An essential element of perjury is that the false statement under oath must be material to an issue or point in question. The false statement must be so connected with the fact directly in issue as to have a legitimate tendency to prove or disprove such fact. *Smith*, 230 N.C. at 198, 52 S.E.2d at 348; *State v. Chaney*, 256 N.C. 255, 123 S.E.2d 498 (1962). The question of the materiality of the alleged false testimony is in its nature a question of law for the court rather than of fact for the jury. *State v. Wilson*, 30 N.C. App. 149, 226 S.E.2d 518 (1976).

In *U.S. v. Paolicelli*, 505 F.2d 971, 973 (4th Cir. 1978), *citing U.S. v. Stone*, 429 F.2d 138, 140 (2nd Cir. 1970), the Court stated:

> [M]ateriality of statements made in a grand jury investigation may more readily appear than that of similar evidence offered on an issue of civil or criminal litigation, since the purpose of the investigation is to get at facts which will enable the grand jury to determine whether formal charges should be

made against someone rather than prove matters directly at issue.

Given the wide-ranging investigative function of the grand jury, the materiality of any line of inquiry pursued by a grand jury must be broadly construed. In attempting to define materiality of testimony in grand jury proceedings, the Court in *U.S. v. Friedhaber*, 826 F.2d 284, 286 (4th Cir. 1987), *on reconsideration*, 856 F.2d 640 (4th Cir. 1988) held that testimony is material if it has the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation. The scope of the grand jury investigation in the case *sub judice* was broad. Defendant's doubtful responses were an attempt to influence the grand jury's investigation into the extent of the drug problem within the county, and including but not limited to the rendering of indictments. Defendant's answers were capable of misleading or deceiving the grand jury relative to whether the substance Billy Ray Smith showed to defendant and Darrel Rouse on 4 May 1987 was in fact cocaine, and if so, in what amount. It is not necessary that defendant's false statements actually impeded the grand jury investigation, only that the answers were capable of influencing the grand jury on an issue before it, including collateral matters. Accordingly, the trial court correctly denied defendant's motion to dismiss.

In the trial of defendant's case, we find no error and affirm the trial court's decision.

Judges GREENE and WYNN concur.